# EXHIBIT 1

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE: ZOLOFT (SERTRALINE HYDROCHLORIDE) PRODUCTS LIABILITY LITIGATION | § § § | MDL NO. 2342 12-MD-2342 |
| *THIS DOCUMENT RELATES TO:* | § § | HON. CYNTHIA M. RUFE |
| ALL CASES | § | |

## DEFENDANT PFIZER INC.'S MEMORANDUM IN SUPPORT OF ITS POSITION CONCERNING EX PARTE CONTACT WITH PHYSICIANS

Defendant Pfizer Inc. ("Pfizer") respectfully submits this memorandum in support of its request that this Court enter an order ensuring that third-party fact witnesses and healthcare professionals are not improperly influenced by ex parte discussions with Plaintiffs' counsel. Specifically, Pfizer seeks entry of the following case management provision, as part of the Deposition Protocol the parties have otherwise reached agreement upon or as a separate order:

> Contact with a treating or prescribing healthcare provider for a Plaintiff shall be governed by the relevant procedural rules in the jurisdiction in which the healthcare provider resides. Notwithstanding the foregoing, the parties' communications with Plaintiffs' treating or prescribing healthcare providers shall be limited to the individual care of the individual Plaintiff, and the parties shall not show to, provide to, or discuss with Plaintiffs' treating or prescribing healthcare providers any documents other than those healthcare providers' records of treatment for a Plaintiff or documents that the physician previously received from Pfizer, if any. Additionally, to the extent records of treatment are sent, opposing counsel shall be copied on any correspondence enclosing the same. This paragraph is not meant to restrict or prohibit communications with healthcare providers for the Plaintiffs related solely to Plaintiffs' medical care or to scheduling of or payment for a deposition. Opposing counsel shall, however, be copied on any written correspondence regarding scheduling or payment.

## PRELIMINARY STATEMENT

The parties agree that Plaintiffs' prescribing and treating physicians are critical non-party fact witnesses.  Their testimony on case-specific prescribing decisions and risk-benefit analyses, among other issues, can have dispositive implications in these failure-to-warn actions.  But they are fact witnesses, not retained experts, and the Court and the parties should be able to elicit their truthful testimony without taint or improper influence.  For this reason, and based on Pfizer's and its counsel's experience in similar cases, it is vital that this Court establish a few case management "ground rules" so that both sides have the opportunity to obtain unvarnished testimony from these witnesses.  Pfizer's requested order would not preclude Plaintiffs' counsel from conducting ex parte interviews with Plaintiffs' physicians.  Rather, it would limit ex parte interviews and communications by both sides to the medical care of the Plaintiffs.

To date, Plaintiffs' counsel have rejected Pfizer's proposed order, insisting that they should be able to engage in unfettered and unlimited ex parte communications with physicians, even to the point of intentionally prejudicing such witnesses against Defendants.  Indeed, Plaintiffs' counsel have asserted before Discovery Master Chirls and Defendants' counsel that they have an unfettered right to discuss with these third-party witnesses, on an ex parte basis before a deposition, documents and issues that involve matters completely unrelated to an individual Plaintiff's care.  This is a critically important issue for Pfizer, and Pfizer respectfully requests that this Court make clear that any such efforts are improper.  In addition to prejudicing Defendants, efforts like these can cause healthcare professionals to lose faith in the system, make them feel as though they are simply being used as pawns by counsel, and discourage them from cooperating with the parties in depositions or at trial, an outcome no party could want.

Plaintiffs' counsel have stated they believe they have a right to have unlimited ex parte communications with treating and prescribing physicians.  Based on past experience in other cases with plaintiffs' counsel who took the same position, this view includes a perceived right to show and send to physicians before a deposition, and without any participation by or notice to defense counsel, a one-sided view of documents related to past conduct, claims, or proceedings

2

involving the same defendant but completely different products or issues.  It has also often involved plaintiffs' counsel showing physicians cherry-picked internal documents from a defendant's document production and internal or external studies that purportedly show that a defendant knew or should have known of a potential alleged risk despite the fact that other documents, not shown to the witness, demonstrate the contrary.  When counsel engage in these tactics, they then ask the doctor, hypothetically, how the doctor would have acted "had he or she known" about the document.  All of this occurs to pre-dispose the doctor against the defendant and without defense counsel being present and able to cure the wrongful suggestion.  Given Plaintiffs' counsel's position that they should not be limited in any way, and that they do, in fact, intend to try to "influence" physicians, Pfizer has every reason to expect similar efforts here.

Not surprisingly, these tactics can significantly and improperly color the views and testimony of prescribing and treating physicians, negatively dispose them towards the legal system, severely compromise defendants' right to fair depositions, and ultimately threaten the integrity of the judicial proceeding as a whole.  Just as important, busy physicians should not be burdened with ex parte efforts by lawyers to convert them from fact witnesses into biased advocates based on one-sided, cherry-picked information not within their personal knowledge and not related to the medical care of the patient at issue.  To the extent Plaintiffs believe that state law permits them to engage in such unrestricted conduct with respect to non-party physician witnesses, that is a clear misapprehension of the law.

Pfizer's proposal seeks to avoid these burdens on fact witnesses and foster appropriate and equitable discovery of non-parties.  Plaintiffs would retain the ability at depositions to seek to question physicians on issues and documents outside of those related to a Plaintiff's medical care, on the record and subject to the Rules and the agreed provisions set forth in the Protective Order.  Pfizer and other Defendants would be similarly limited in their ex parte communications.  As a result, depositions – conducted on the record and with both sides participating – rather than one-sided off-the-record meetings and presentations designed to influence witnesses, would become the focus of discovery of physicians.  As set forth below, courts have adopted similar

orders under analogous circumstances, without any compromise of Plaintiffs' rights to speech or otherwise.  Accordingly, Pfizer respectfully requests that this Court enter its proposed order.

## ARGUMENT

### EX PARTE COMMUNICATIONS WITH HEALTHCARE PROVIDERS SHOULD BE LIMITED TO THE MEDICAL CARE OF THE PLAINTIFF

As set forth in the language proposed above, Pfizer's requested order would allow Plaintiffs' counsel to conduct ex parte communications with non-party physicians in each case, and Defendants' counsel to conduct such communications in states with rules permitting it, as long as the communications are "limited to the individual care of the individual Plaintiff, and the parties [do] not show to, provide to, or discuss with Plaintiffs' treating or prescribing healthcare providers any documents other than those healthcare providers' records of treatment for a Plaintiff or documents that the physician previously received from Pfizer, if any."  Under Pfizer's proposal, Plaintiffs' counsel (and in some cases, Defendants' counsel) would be able to discuss with Plaintiffs' physicians on an ex parte basis, and before a physician's deposition, Plaintiffs' medical records and medical care, including with respect to Zoloft, the pregnancy at issue, and the injuries alleged.  These subjects encompass core areas of discovery and would provide counsel ample opportunity to gather information that may inform both the merits of their claims and their strategy in advance of a physician's deposition.  Indeed, these are the topics on which depositions of physicians should focus in cases like these.

Pfizer's proposed order would *not* limit Plaintiffs' ability to properly examine physicians about matters unrelated to the Plaintiff's medical care during depositions, to the extent such examination is otherwise permitted by the Federal Rules and the Protective Order.  Allowing Defendants' counsel to be present, assert appropriate objections, and conduct their own examination in response to such questioning by Plaintiffs will limit the ability of Plaintiffs' counsel to unduly influence, confuse, and bias physician testimony in private, off-the record meetings.  For example, if questions or documents are irrelevant to a plaintiff's care and serve no purpose other than to try to prejudice the physician against Pfizer, Pfizer will have the

opportunity to object and seek court intervention, an opportunity that is nonexistent where such prejudicial conduct occurs ex parte.   Although Plaintiffs have rejected Pfizer's proposed compromise suggestions, they have not demonstrated that they impose any unfair restriction on their ability to seek testimony supporting their claims as provided for under the Rules.

Moreover, the agreed Protective Order already prohibits Plaintiffs' counsel from showing confidential information to a non-party fact witness, such as a prescribing physician – before or during a deposition – unless "there is a reasonable basis to believe that the witness will give relevant testimony regarding the Confidential Information or that disclosure is necessary to prepare the witness for the testimony."  (Pretrial Order No. 8 (Protective Order), ¶ 5(d)) [215].) This provision contemplates that before showing a non-party physician a confidential document, counsel must have more basis than a desire to influence the physician's impression of or testimony about Pfizer.   Pfizer's proposal here, which would apply to all documents, is consistent with the Protective Order and with the greater goal of obtaining truthful testimony.

By contrast, Plaintiffs' counsel's proposed "anything goes" approach to ex parte meetings with doctors, which they have admitted could include showing documents intended both to create a negative impression of Pfizer and influence physicians on liability issues, would almost certainly prejudice Pfizer and distort the testimony of critical non-party witnesses.  Plaintiffs cannot reconcile their view that such conduct should be permitted with rules requiring that attorneys act in good faith and not unfairly influence testimony of third-party witnesses.[1] Moreover, pursuant to their inherent power, courts may limit or sanction communications that are designed to frustrate a party's ability to obtain discovery from a non-party treating physician. *See, e.g.*, *Parker v. Upsher-Smith Labs., Inc.*, No. 3:06-cv-0518, 2009 WL 418596, at *8 (D.

---

[1]   For example, the Model Rules and the Rules of Professional Conduct that govern in many states specifically provide that, "[f]air competition in the adversary system is secured by prohibitions against destruction or concealment of evidence, *improperly influencing witnesses*, obstructive tactics in discovery procedure, and the like."  Model Rules of Prof'l Conduct R. 3.4 cmt. 1 (2012) (emphasis added); *see also* Pa. Rules of Prof'l Conduct 3.4(d) & cmt. 1 (2012) (same); Tex. Disciplinary Rules of Prof'l Conduct R. 3.04 & cmt. 1 (2005) (same).

Nev. Feb. 18, 2009) (attached as Exhibit A) (finding plaintiff's counsel acted in "bad faith" and "for the improper purpose of influencing" non-party physicians, and imposing sanctions, where counsel sent letters to plaintiff's doctors informing them that they were not required to speak with defense counsel).

Indeed, contrary to Plaintiffs' contentions, the order Pfizer has requested would be neither anomalous nor unprecedented. Multiple MDL courts in pharmaceutical cases have entered orders in recent years that provide for the same or similar conditions with respect to ex parte communications. For example, in *In re Ortho Evra Products Liability Litigation*, No. 1:06-40000, 2010 WL 320064 (N.D. Ohio Jan. 20, 2010) (attached as Exhibit B), Judge Katz granted in part defendants' motion to regulate ex parte contacts with Plaintiffs' treating physician. Its order "allow[ed] Plaintiffs' counsel to have ex parte contact with treating physicians with the following limitations":

> Specifically, Plaintiffs' counsel may meet *ex parte* to discuss the physicians' records, course of treatment and related matters, but not as to liability issues or theories, product warnings, Defendant research documents or related materials. Violations of this approach, as stated above, will result in sanctions.

*Id.* at *2. The court noted plaintiffs' objections to the regulation of contact with their treating physicians, but it adopted limitations very similar to those Pfizer has requested here to avoid improper efforts to influence non-party physicians, holding:

> The Court will assume capable and mature attorneys such as Plaintiffs' counsel will not act in a manner which would result in woodshedding or gaining an unfair advantage by ambush when engaged in *ex parte* contact with treating physicians. Such conduct will not be tolerated.

*Id.* at *2; *see also Hall, et al. v. Bristol-Meyers Squibb Co., et al.*, No. 3:06-5203, transcript at 6-7 (D.N.J. heard Oct. 13, 2010) (excerpts attached as Exhibit C) (following *Ortho Evra* in federal cases involving Plavix, holding: "I will allow plaintiffs to have ex parte contact with the treating physicians, but limited solely to the discussions of the physicians' records, the course of treatment, and related matters, but not as to liability issues, or theories, product warnings, or defendant research documents or related materials."). Here too, notwithstanding the assumption

that Plaintiffs' counsel will and should act appropriately, there is a need to adopt clear and fair directives in advance as to ex parte communications, for all parties' benefit.

Similarly, in the Chantix MDL, Judge Johnson entered an order expressly limiting plaintiffs' counsel's ex parte communications with physicians "to the individual *care* of the individual plaintiffs, such as the plaintiffs' *treatment, medical records and conversations with their health care providers*." *In re Chantix (Varenicline) Prods. Liab. Litig.*, No. 2:09-CV-2039, 2011 WL 9995561, at *4 (N.D. Ala. June 30, 2011) (attached as Exhibit D) (emphasis in original). The court further ordered that "Plaintiffs' counsel shall *not discuss defendant's internal documents* with plaintiffs' health care providers outside of a deposition or other on the record setting." *Id.*[2] Pfizer has requested essentially the same provisions here based in part on its experience in the Chantix litigation, in which the court's order promoted more fair and equitable physician depositions.

Likewise, in *In re Nuvaring Products Liability Litigation*, No. 4:08MD1964, 2009 WL 775442 (E.D. Mo. Mar. 20, 2009) (attached as Exhibit E), Judge Sippel held that the following "limitations on any [physician] interviews conducted by Plaintiffs are fair and appropriate and shall apply":

> Plaintiffs must: tell the providers that any interviews are voluntary and can be declined; the provider must be presented with a medical authorization that is compliant with HIPAA and signed by the plaintiff; and *the interview should be limited to the particular plaintiff's medical condition at issue in the current litigation.*

---

[2]   The Chantix court also ordered that defendants' counsel were prohibited from meeting ex parte with plaintiffs' physicians. *See Chantix*, 2011 WL 9995561, at *4. Pfizer does not believe that restriction is warranted here or supported by the case law. However, in the interest of compromise and expeditiously resolving this issue in a fair and appropriate manner, Pfizer is willing to follow state rules on ex parte communications, even though such rules arguably do not govern in a federal action.

*Id.* at *2 (emphasis added).   In fact, plaintiffs there "agreed that those guidelines would be appropriate."   *Id.*   Here, Pfizer and other Defendants would also follow such guidelines in states with rules permitting ex parte communications by defendants.[3]

As these directly relevant authorities confirm, Pfizer's proposed order is reasonable, practical, and firmly rooted in the interests of advancing fair discovery proceedings and adjudication on the merits.   Pfizer should not have to wait until the end of litigation, when the damage has been done, to highlight the abuses that have occurred in many other litigations.

<u>**CONCLUSION**</u>

For the foregoing reasons, Pfizer respectfully requests that this Court adopt and enter Pfizer's proposed order governing ex parte communications with Plaintiffs' healthcare providers.

Dated: New York, New York                         Respectfully submitted,
          June 6, 2013

                                                                    /s/ Mark S. Cheffo
                                                                    Mark S. Cheffo
                                                                    Quinn Emanuel Urquhart & Sullivan, LLP
                                                                    51 Madison Avenue, 22nd Floor
                                                                    New York, NY 10010
                                                                    Telephone:  (212) 849-7000
                                                                    Facsimile:  (212) 849-7100
                                                                    MarkCheffo@quinnemanuel.com

                                                                    *Attorneys for Defendant Pfizer Inc.*

---

[3]   Other courts have gone further, prohibiting all ex parte contacts by plaintiffs' counsel with their doctors.  In the Aredia/Zometa New Jersey proceedings, for example, Judge Mayer ordered that no party should have ex parte contacts with plaintiff's treating physician or influence the deposition or trial testimony of plaintiffs' treating physicians.  *See Gaus v. Novartis Pharms. Corp.*, No. MID-L-007014-07-MT, No. 278, at *18-19 (N.J. Super. Ct. Oct. 29, 2009) (attached as Ex. F).  Pfizer's proposed order stops short of the total bar on ex parte contacts adopted in *Gaus* and expressly preserves the ability of Plaintiffs' counsel to discuss with treating doctors Plaintiffs' medical condition and treatment.

# Exhibit A



Not Reported in F.Supp.2d, 2009 WL 418596 (D.Nev.)
**(Cite as: 2009 WL 418596 (D.Nev.))**

Only the Westlaw citation is currently available.

United States District Court,
D. Nevada.
Iris PARKER, Plaintiff,
v.
UPSHER–SMITH LABORATORIES, INC., Defendants.

No. 3:06–CV–0518–ECR (VPC).

Feb. 18, 2009.

Jonathan J. Whitehead, Rands, South, Gardner & Hetey, Reno, NV, for Plaintiff.

Brett K. South, Rands, South, Gardner & Hetey, Reno, NV, for Plaintiff/Defendants.

Adam R. Moore, Mark C. Hegarty, Shook, Hardy & Bacon L.L.P., Kansas City, MO, Steven E. Guinn, Michael W. Large, Laxalt & Nomura, Ltd., Reno, NV, for Defendants.

**ORDER**

VALERIE P. COOKE, United States Magistrate Judge.

**\*1** Before the court is the emergency motion of defendant Upsher–Smith Laboratories, Inc. ("defendant") for sanctions for plaintiff's interference with the court's discovery order authorizing *ex parte* communications with treating physicians (# 73). Plaintiff, Iris Parker ("plaintiff") opposed (# 80), defendant replied (# 83), and this court held a hearing on the motion on February 12, 2009.

**I.** *Procedural History*

Plaintiff brings this products liability action against defendant alleging that her husband, Arthur L.

Parker, died as a result of injuries sustained from ingesting amiodarone, an anti-arrhythmic drug manufactured by defendant (# 34). The court established monthly case management conferences in this action, given that it has been pending since September 2006, and the parties anticipated extensive discovery. Fact discovery is closed, the close of expert witness discovery is March 16, 2009, and dispositive motions are due April 15, 2009(# 65). The court advised that no further extensions of this most recent scheduling order would be granted (# 66).

On February 3, 2008, this court held the monthly case management hearing, and in anticipation of that hearing, the parties filed case management reports (# s 71 & 72). Present on behalf of plaintiff were Mr. South and Mr. Whitehead, and Mr. South presented argument for the plaintiff. The parties advised that an issue had arisen concerning whether defendant is entitled to interview certain treating physicians identified in plaintiff's disclosures to discuss their opinions and their care and treatment of the decedent. Plaintiff's position is that Nevada law prohibits defense counsel from having *ex parte* communications with a plaintiff's treating physician, and that Nev.Rev.Stat. § 49.245(3) only waives the privilege as to written medical or hospital records (# 72). Defendant's view is that *ex parte* interviews of non-retained treating physicians are a proper part of the discovery process, and that plaintiff expressly waived the physician-patient privilege by bringing this action and authorizing release of the decedent's medical records (# 71).

A second issue concerned whether the Health Insurance Portability and Accountability Act of 1996 (HIPAA) permits a physician to engage in *ex parte* interviews with defendant's counsel where the plaintiff has authorized disclosure under HIPAA regulations. It was undisputed that plaintiff executed a HIPAA authorization to allow physicians to disclose

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2009 WL 418596 (D.Nev.)
**(Cite as: 2009 WL 418596 (D.Nev.))**

plaintiff's medical information. Defendant contends that once a HIPAA authorization is executed, *ex parte* interviews between plaintiff's treatment providers and defense counsel are permitted, and plaintiff takes a contrary review. Plaintiff disagrees and asserts that HIPAA does not pre-empt Nevada's physician-patient privilege, which only provides for a written waiver of medical records.

At the February 3, 2009 case management conference, the court heard oral argument from counsel on these issues and ruled in favor of defendant, as more fully set forth in its minute order (# 75). In summary, the court held that defendant may engage in *ex parte* interviews of those treating physicians not designated as expert witnesses, and specifically authorized defendant's counsel to interview six physicians. *Id.* The court further directed counsel to meet and confer as to the scope of interviews, and if they could not resolve this issue, they were directed to file notices with the court, and a hearing would be scheduled to decide this matter. *Id.*

**\*2** The court also found that HIPAA permits a physician to disclose a patient's medical information once a patient has executed a valid authorization. *Id.* Counsel reported that plaintiff executed the HIPAA authorizations in this proceeding, but they had expired, and plaintiff's counsel indicated he would not advise his client execute new authorizations; therefore, the court ordered that notwithstanding this refusal, the court's order authorized the defendant's *ex parte* interviews of the physicians identified in the order. *Id.*

On February 5, 2009, plaintiff filed a document styled, "plaintiff's position regarding scope of defendant's ex parte communications with physicians" (# 74). In it, plaintiff renewed her argument that *ex parte* interviews of the treating physicians are improper. *Id.* Plaintiff concluded by requesting that defendant's physician interviews "be limited only to the decedent's treatment for atrial fibrillation and his subsequent development of pulmonary difficulties."

*Id.* Plaintiff was silent concerning any communications she had with decedent's treating physicians concerning the February 3, 2009 order.

Defendant did not immediately file a status report concerning counsels' efforts to resolve their dispute concerning the scope of the anticipated *ex parte* interviews with treating physicians; rather, defendant filed the pending motion for sanctions because plaintiff's counsel sent twenty letters to the decedent's treating physicians, including Mr. Parker's cardiologists, pulmonologists, family care physician, surgeon, and other physicians who treated Mr. Parker in the hospital prior to his death (# 73).

The letters, dated February 4, 2009, are identical and state:

I represent Iris Parker and the estate of her deceased husband, Arthur Parker, in connection with litigation brought against Upsher–Smith Laboratories. It is our contention in the lawsuit that Mr. Parker developed interstitial lung disease and died as a result of his taking amiodarone for treatment of an atrial fibrillation.

Notwithstanding the requirements of HIPAA and the fact that the authorization previously provided to you has expired, Upsher–Smith, through its attorney, has requested that the court allow its attorney to contact Mr. Parker's treating physicians to discuss his case and treatment as it relates to his development of interstitial lung disease and ultimate death.

I am writing this letter to inform you of the court's decision and also to advise you that even though the court has permitted counsel for Upsher–Smith to speak with you outside our presence, you are free to decide whether or not you wish to meet privately with defense counsel. There is legal authority which provides that neither HIPAA-compliant authorizations nor a court order can force a healthcare pro-

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2009 WL 418596 (D.Nev.)
**(Cite as: 2009 WL 418596 (D.Nev.))**

fessional to communicate with the attorneys. *See,* *Arons v. Jutkowitz,* 9 N.Y.3d 393, 880 N.E.2d 831 (N.Y.2007); *Moreland v. Austin,* 284 Ga. 730, 670 S.E.2d 68 (2008).

**\*3** If you decide to meet privately with counsel for Upsher–Smith, we would appreciate your advising us of your decision so that we may have an opportunity to meet privately with you as well.

If you have any questions regarding this matter, or wish to discuss the matter with me further, you may contact me.

Sincerely,

RANDS, SOUTH & GARDNER

Brett K. South

Mr. Whitehead, co-counsel for plaintiff, spoke with defendant's counsel on February 4, 2009, and they mutually agreed to continue their discussions on February 5, 2009. Although Mr. Whitehead knew that his co-counsel, Mr. South, had sent the twenty letters, he did not disclose this to defendant's counsel during their discussions. In the interim, defendant's counsel received copies of Mr. South's letters and then contacted Mr. Whitehead to advise he viewed the letters as an improper usurpation of the court's order to meet and confer (# 81). Thereafter, defendant moved for sanctions.[FN1]

> [FN1.] Defendant also contends that plaintiff's counsel's interview with a *Reno Gazette–Journal* reporter who attended the February 3, 2009, hearing followed by a newspaper article could be characterized as an attempt to communicate indirectly with treating physicians who might read the article and decide not to participate in the *ex parte* interviews this court approved. Newspaper

reporters frequently attend court hearings and report the news on cases. The court finds that Mr. South's interview was not improper.

**II. *The February 12, 2009 Hearing***
Prior to hearing arguments of counsel, the court canvassed counsel for the parties, Mr. South and Mr. Moore, concerning their understanding of the court's February 3, 2009 order. The court asked the following questions:

1. Was it your understanding on February 3, 2009, that the court's order allowed defendant to conduct *ex parte* interview of treating physicians not designated as expert witnesses?

2. Was it your understanding on February 3, 2009, that the court ordered counsel for the parties to meet and confer concerning reasonable limitations about the scope of the *ex parte* physician interviews and report back to the court if the dispute remained unresolved?

3. Was it your understanding on February 3, 2009, that based on the directive to meet and confer on this issue, that any physician interviews would be deferred until this issue was resolved?

4. Was it your understanding on February 3, 2009, that with respect to HIPAA authorizations, the court determined that because plaintiff executed HIPAA-required authorizations releasing the decedent's medical records, HIPAA was not an obstacle to the *ex parte* interviews that defendant requested?

5. Was it your understanding on February 3, 2009, that when the court was advised that the HIPAA authorizations had expired, and plaintiff's counsel declined to have plaintiff execute new authorizations, the court ordered that notwithstanding that refusal, this court's order would serve as authoriza-

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2009 WL 418596 (D.Nev.)
**(Cite as: 2009 WL 418596 (D.Nev.))**

tion?

6. Is it correct that at the February 3, 2009, hearing, there was no discussion concerning whether physicians solicited for defendant's *ex parte* interviews could be compelled to participate?

Counsel acknowledged they understood what the court ordered, as set for above, with the exception of Item 3. Although defendant's counsel, Mr. Moore, understood that the interviews would be deferred until the scope of the interviews was established, Mr. South told the court that he did not have that understanding. Both counsel also agreed that there was no discussion at the hearing concerning whether treating physicians could be compelled to attend interviews with defendant's counsel.

**\*4** The court asked Mr. South to explain why he sent the twenty letters to treating physicians, and he replied that he felt it necessary to inform them that based on his further legal research after the February 3, 2009 hearing, he determined that they were entitled to notice that they were not compelled to attend any *ex parte* interviews. Mr. South told the court that he did not believe his letter violated the terms or the intent of the court's order, and that it was not a pre-emptive attempt to insure that physicians who received his letter would refuse to engage in *ex parte* interviews with defendant's counsel. As stated in plaintiff's opposition to the motion for sanctions, "Plaintiff had a right to inform the physicians about the purpose of the interviews and that they were not obligated to meet privately with Upsher–Smith's counsel," (# 80, page 12, lines 3–4). Mr. South took the position that despite the court's order, he had an independent right to notify the treating physicians immediately that they were not compelled to submit to interviews with counsel.

**III.** *Discussion*

**A. Sanctions Pursuant to the Court's Inherent**

**Authority**

The federal court has inherent power to levy sanctions, including attorney's fees, for "willful disobedience of a court order ... or when the losing party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons...." *Roadway Express, Inc. v. Piper,* 447 U.S. 752, 766 (1980). In *Chambers v. NASCO, Inc.,* 501 U.S. 32, 46 (1991), the Court reaffirmed the *Roadway* principles and "left no question that a court may levy fee-based sanctions when a party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons, delaying or disrupting litigation, or has taken actions in the litigation for an improper purpose." *Fink v. Gomez,* 239 F.3d 989, 992 (9th Cir.2001) (citing *Chambers,* 501 U.S. at 45–46, n. 10). In *Fink,* the Ninth Circuit made clear that imposition of sanctions under a court's inherent power requires a finding of bad faith or "conduct tantamount to bad faith:"

Sanctions are available for a variety of types of willful actions, including recklessness when combined with an additional factor such as frivolousness, harassment, or an improper purpose.... An attorney's reckless misstatements of law or fact, when coupled with an improper purpose, such as an attempt to influence or manipulate proceedings in a case in order to gain tactical advantage in another case, are sanctionable under a court's inherent power.

*Id.* at 994. The burden of proof is "clear and convincing evidence" ( *Roadway Express,* 447 U.S. at 764); however, a finding of bad faith may not be required when an "attorney acts recklessly with an improper intent." *Fink,* 239 F.3d at 993. The types of sanctions that may be imposed under the court's inherent powers include "fines, awards of attorney's fee and expenses, contempt citations, entries of dismissal or default, suspensions or disbarment, preclusion orders, disqualification of counsel, permission of adverse inferences and injunctions. *Id.*

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2009 WL 418596 (D.Nev.)
**(Cite as: 2009 WL 418596 (D.Nev.))**

### B. Sanctions under Fed.R.Civ.P. 37(b)(2)

**\*5** Fed.R.Civ.P. 37(b)(2) governs failures to comply with discovery orders and provides:

> If a party or a party's officer, director, or managing agent—or a witness designated under Rule 30(b)(6) or 31(a)(4)—fails to obey an order to provide or permit discovery, includes an order under Rules 26(f), 35, or 37(a), the court where the action is pending may issue further just orders.

The court has broad discretion to impose one or more of the listed sanctions or any other sanction it deems appropriate. *Yeti by Molly, Ltd. v. Deckers Outdoor Corp.,* 259 F.3d 1101, 1105–1106 (9th Cir.2001). The court may deem facts established (*Insurance Corp of Ireland, Ltd. v. Compagnie des Bauxites de Guinee,* 456 U.S. 694 (1982); *Navallier v. Sletten,* 262 F.3d 923, 947–48 (9th Cir.2001), *cert. denied,* 536 U.S. 941 (2002)), prohibit evidence (*Hoffman v. Construction Protective Serv, Inc.,* 541 F.3d 1175, 1179 (9th Cir.2008)), strike pleadings (*U.S. v. Sumitomo Marine & Fire Ins. Co., Ltd.,* 617 F.2d 1365, 1369 (9th Cir.1980)), enter a dispositive ruling (*G–K Properties v. Redevelopment Agency of the City of San Jose,* 577 F.2d 645, 647 (9th Cir.1978)), or it may treat the failure to obey its order as a contempt of the court (*Richmark Corp. v. Timber Falling Consultants,* 959 F.2d 1468 (9th Cir.1992). The court is not limited to the sanctions listed in Rules 37(b)(2), and may make an order that it deems "just." *Valley Engineers, Inc. v. Electric Enginerring Co.,* cert. denied, 526 U.S. 1064 (1999) (justice is the central factor in a sanctions order under Rule 37(b)).

### C. Sanctions under 28 U.S.C. § 1927

28 U.S.C. § 1927 states:

> Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

Although Section 1927 has a clear compensatory purpose because it permits an award of attorney's fees and costs, "it is in reality a penal statute designed to discourage unnecessary delay in litigation by requiring attorneys 'or other persons' to compensate personally other litigant who incur excess costs due to their misconduct." GEORGENE M. VAIRO, RULE 11 SANCTIONS 765 (3d ed.2003), citing *Roadway Express,* 447 U.S. at 759–62 (Noting the importance of Section 1927 sanctions in that "lawyers who multiply legal proceedings [are] taxed with the extra 'costs' they generate.").

To warrant sanctions pursuant to Section 1927, a court must find the attorney acted with recklessness or subjective bad faith. *United States v. Blodgett,* 709 F.2d 608, 610 (9th Cir.1983). Section 1927 sanctions may only be imposed on attorneys and *pro se* litigants. *Wages v. Internal Revenue Serv.,* 915 F.2d 1230, 1235–36 (9th Cir.1989). Because imposition of Section 1927 sanctions are penal in nature, it requires the court to make specific findings of fact. *Trulis v. Barton,* 107 F.3d 685, 692 (9th Cir.1995).

### D. Sanctions pursuant to Local Rule IA 4–1

**\*6** The court's Local Rules of Practice also provide for a mechanism for imposition of sanctions. Rule IA 4–1(d) provides, "A court may, after notice and opportunity to be heard, impose any and all appropriate sanctions on an attorney or party appearing in *pro se* who, without just cause, [f]ails to comply with any order of this court."

### IV. *Findings*

Based upon the papers filed herein and oral argument at the February 12, 2009 hearing, the court makes the following findings of fact:

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2009 WL 418596 (D.Nev.)
**(Cite as: 2009 WL 418596 (D.Nev.))**

1. At the conclusion of the February 3, 2009, hearing, Mr. South understood that this court's order allowed defendant's counsel to conduct *ex parte* interviews of the decedent's treating physicians not designated as expert witnesses.

2. At the conclusion of that hearing, Mr. South understood that counsel for the parties were to meet and confer concerning reasonable limitations about the scope of the *ex parte* physician interviews and report back to the court if issues remained in dispute.

3. Mr. Moore, defendant's counsel, understood that based on the directive to meet and confer on this issue, any physician interviews would be deferred until this issue was resolved.

4. Mr. South represented to the court on February 12, 2009, that this was not his understanding; therefore, he felt compelled to send twenty letters to the decedent's treating physicians on February 4, 2009, to advise them about the court order and to tell them that they were not required to meet with defendant's counsel.

5. The court does not find credible Mr. South's understanding that the physician interviews were not deferred until the scope of the interviews was resolved between the parties or by the court.

6. Mr. South, with Mr. Whitehead's knowledge, sent the twenty letters to treating physicians on February 4, 2009, yet on February 5, 2009, Mr. Whitehead, was ostensibly engaged in the meet-and-confer process this court ordered. Even though he knew Mr. South had already sent the letters on February 5, 2009, he disclosed nothing to defendant's counsel during these discussions.

7. Neither Mr. South nor Mr. Whitehead ever asked defendant's counsel to confirm that there would be no attempt to arrange or conduct physician interviews until the meet-and-confer process concluded, nor did they disclose the results of Mr. South's legal research concerning whether such interviews could be compelled.

8. Just as plaintiff's counsel failed to disclose that Mr. South had sent the letters to physicians, they also failed to disclose this fact to the court in their February 5, 2009 report to the court about the scope of the interviews (# 74).

9. If Mr. South had a sincere concern that defendant's counsel might attempt to contact treating physicians before the scope of the interviews was resolved, he or Mr. Whitehead could have easily communicated those concerns to defendant's counsel, particularly since Mr. Whitehead was already discussing the scope of the interview with defendant's counsel. Mr. Whitehead did not do so.

**\*7** 10. If Mr. South had a sincere concern that communications with defendant's counsel would somehow not resolve this issue, Mr. South had leave to file an emergency motion with the court to address this issue and seek a stay of any interviews until further order of the court. He did not do so.

11. The court finds that Mr. South, with Mr. Whitehead's acquiescence, did not do so because he intended to eviscerate the effect of this court's order and discourage these physicians from participating in the interviews with defendant's counsel.

12. The timing of Mr. South's letters—only one day after the February 3, 2009 hearing—as well plaintiff's counsels' failure to discuss their concerns with opposing counsel or raise them with the court, support the court's finding that Messrs. South and Whitehead acted in bad faith.

13. Mr. South's letter to decedent's treating physi-

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2009 WL 418596 (D.Nev.)
**(Cite as: 2009 WL 418596 (D.Nev.))**

cians implicitly challenged this court's February 3, 2009, order permitting the *ex parte* physician interviews and implied that the court's order was inconsistent with HIPAA ("Notwithstanding the requirements of HIPAA and the fact that the authorization previously provided to you has expired....").

14. Mr. South made these representations in his letters, even though he knew the court had resolved this very issue at the February 3, 2009, hearing.

15. Mr. South knew or reasonably should have known that these physicians would have serious concerns about speaking with defendant's counsel if there were any question whether HIPAA prohibited the interviews.

16. Mr. South stated in the letter that he, on behalf of the plaintiff, had objected to defendant's request as improper, and because his client holds the physician-plaintiff privilege, the implicit message to the physicians was that they should not speak to defendant's counsel.

17. Mr. South further stated in his letter that pursuant to New York and Georgia case authority, the physicians were free to refuse to speak with defendant's counsel, even though Mr. South knew this issue had never been raised with defendant's counsel or the court.

18. In doing so, Mr. South undertook to advise these physicians of their rights when he is not retained as their counsel, and he also usurped the role of the court to fully consider this issue after notice and hearing. Rather than raising this issue with the court, Mr. South took it upon himself to unilaterally decide how the court's ruling should be implemented.

19. The fact that Mr. South sent copies of the twenty letters to defendant's counsel *after they were sent* in no way excuses Mr. South's misconduct. By the

time defendant's counsel received the letters, so had the physicians.

20. Messrs. South and Whitehead were not without legal remedies in the face of the February 3, 2009, with which they disagreed. They could have objected to the order pursuant to LR IB 3–1, they could have moved for reconsideration pursuant to Fed.R.Civ.P. 59(e), and under either option, they could have also asked for a stay of the order until their objection or motion for reconsideration was resolved. Although plaintiff subsequently filed an objection to the February 3, 2009 order pursuant to LR IB 3–1(# 78), this does not excuse plaintiff's counsels' prior misconduct.

**\*8** 21. Plaintiff's counsel contend that the letters to the physicians were not as damaging as defendant claims, since it is highly unlikely that most physicians would agree to such interview under ordinary circumstances. The court finds this argument disingenuous because, if true, why send the letter in the first place?

22. Trial counsel owe an undivided allegiance to their clients, but they also owe important duties candor and honesty to the court and opposing counsel.

23. If a lawyer disagrees with an order of the court, that lawyer does not have leave to disregard or circumvent that order; his or her recourse is to take appropriate steps to test the validity of that ruling pursuant to Local Rules of Practice and the Federal Rules of Civil Procedure.

24. Based upon the facts described herein, including the timing of the letters, their content, Mr. South's failure to meet and confer with counsel or seek relief from the court, Mr. Whitehead's failure to disclose to defendant's counsel any concerns about attempts to meet with physicians during his own

Not Reported in F.Supp.2d, 2009 WL 418596 (D.Nev.)
**(Cite as: 2009 WL 418596 (D.Nev.))**

meet-and-confer discussion with defendant's counsel, and all facts recited herein, the court finds there is clear and convincing evidence that Mr. South and Mr Whitehead acted in bad faith or conduct tantamount to bad faith with the intention to undermine the court's order and insure, to the extent possible, that no physician who received Mr. South's letter would agree to an interview with defendant's counsel. *Roadway Express,* 501 U.S. at 766; Chambers, 501 U.S. at 36; *Fink v. Gomez,* 238 F.3d at 992. Mr. South's conduct in sending the letters to physicians, and Mr. Whitehead's complicity in failing to disclose their intention to send the letters, was done for the improper purpose of influencing these witnesses not to cooperate with defendant's counsel in *ex parte* interviews, and it was done to gain a tactical advantage; that is, to subvert the court's order and insure any physician inclined to be interviewed would not do so.

25. Based upon the foregoing, the court further finds that Mr. South and Mr. Whitehead acted recklessly and with an improper intention. *Fink v. Gomez,* 238 F.3d at 993.

26. Based upon the foregoing, the court finds that Mr. South and Mr. Whitehead violated Fed.R.Civ.P. 37(b)(2). The parties agreed to bring discovery disputes before the court at case management conference and brief issues prior to the hearing as a means of expediting discovery disputes and to save money in attorney's fees for their clients. The court deems the original dispute concerning the *ex parte* interviews as a motion for protective order pursuant to Fed.R.Civ. P. 26(c); therefore, sanctions are available pursuant to Rule 37(b)(2).

27. Based upon the foregoing, the court finds that Mr. South and Mr. Whitehead acted with recklessness and bad faith. 28 U.S.C. § 1927. The court finds Mr. South and Mr. Whitehead multiplied proceedings in this case unreasonably and vexatiously.

**\*9** 28. Based upon the foregoing, the court finds that Mr. South and Mr. Whitehead, without just cause, failed to comply with this court's February 3, 2009 order by their conduct in violation of LR IA 4–1.

**V. *Sanctions***

As noted, plaintiff filed an objection to this court's February 3, 2009 order that defendant's counsel may engage in *ex parte* interviews with the decedent's treating physicians not designated as expert witnesses (# 78). If the District Court overrules this court's order as clearly erroneous or contrary law, there will be no *ex parte* interviews of the physicians. Nevertheless, plaintiff's counsels' sanctionable conduct will not be excused, since it is a separate issue from the disputed order itself. On the other hand, if the District Court affirms this court's order, it will be left to this court to fashion remedial measures to undo the harm plaintiff's counsel caused. Therefore, this court will defer its order concerning remedial steps it will order, including but not limited to, further sanctions under Rule 37(b)(2), until the District Court rules on plaintiff's objection.

That leaves the question of sanctions for plaintiff's counsel's violation of this court's order. Having reviewed the papers filed herein, having given notice and opportunity to be heard, and good cause appearing, defendant's motion for sanctions (# 73) is GRANTED.

IT IS HEREBY ORDERED:

1. Pursuant to the court's inherent power, 28 U.S.C. § 1927, and LR IA 4–1, plaintiff's counsel shall pay all defendant all attorney's fees and costs incurred in connection with the motion for sanctions (# 73). Defendant's counsel shall file statement of attorney's fees and costs pursuant to LR 54–16.

2. Pursuant to the court's inherent power and LR IA 4–1, plaintiff's counsel, not the plaintiff, are sanc-

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2009 WL 418596 (D.Nev.)
**(Cite as: 2009 WL 418596 (D.Nev.))**

tioned the sum of $4,000.00, payable to the Attor-
ney Admission Fund within thirty (30) days of the
date of this order.

3. The court reserves imposition of additional sanc-
tions until disposition of plaintiff's objection (# 78)
to the District Court.

   IT IS SO ORDERED.

D.Nev.,2009.
Parker v. Upsher-Smith Laboratories, Inc.
Not Reported in F.Supp.2d, 2009 WL 418596
(D.Nev.)

END OF DOCUMENT

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

# Exhibit B



Not Reported in F.Supp.2d, 2010 WL 320064 (N.D.Ohio)
**(Cite as: 2010 WL 320064 (N.D.Ohio))**



Only the Westlaw citation is currently available.

**This decision was reviewed by West editorial staff and not assigned editorial enhancements.**

United States District Court,
N.D. Ohio.
In re ORTHO EVRA PRODUCTS LIABILITY
LITIGATION.
This Document Relates To: All Cases.

N.D. Ohio Case No. 1:06–40000.
MDL Docket No. 1742.
Jan. 20, 2010.

### ORDER

DAVID A. KATZ, District Judge.

**\*1** This matter comes before the Court on the Defendants' motion to regulate *ex parte* contacts with Plaintiffs' treating physicians (Doc. No. 399), Plaintiffs' response (Doc. No. 400), and Defendants' reply thereto (Doc. No. 404). This Court has jurisdiction pursuant to 28 U.S.C. §§ 1407(b) and 1332.

The Defendants request prohibiting *ex parte* contact by Plaintiffs' counsel with the treating physicians or limiting *ex parte* contacts "to discussion of the plaintiff's medical condition and prohibiting discussion of liability issues, warnings and Company documents." (Doc. No. 399 at p. 7.) Defendants seek to prevent an unfair advantage by Plaintiffs lobbying their theories of liability and causation upon the treating physicians during the *ex parte* contact. In support of their motion, Defendants request this Court adopt the approach of New Jersey in the *Zometa/Aredia Litigation* litigation or the federal MDL, *NuvaRing Products Liability Litigation.*

Plaintiffs strenuously object to regulation of such contact with their own treating physicians. First, they note the federal MDL cases hail from various states, each of which deals with the physician-patient privilege in different ways. To alter that privilege would prove difficult and other courts dealing with this issue in the mass tort context have refused to enter that minefield. Second, they dispute the applicability of the New Jersey ruling to the present dispute. Third, they contend other federal MDL courts have allowed plaintiffs to have *ex parte* contact with their treating physicians.

The Court has considered the arguments premised by both sides as well as the cases presented in support of those positions. In the New Jersey litigation involving Aredia® and Zometa®, the state court considered the defendants' request to conduct *ex parte* interviews with treating physicians but denied this request despite the fact that New Jersey law FN1 allows for such contact in furtherance of efficient discovery. *Gaus v. Novartis Pharmaceuticals Corp.,* Docket No. MID–L–007014–07–MT (New Jersey, Oct. 29, 2009). The rationale employed by Judge Mayer in *Gaus* took into account the "unique set of practical concerns presented in mass tort cases" as well as the number of plaintiffs (over 150) in determining the Court's resources would be impaired by a flood of discovery disputes regarding each treating physician. *Id.* at p. 17. To ensure the same right of access and promote an efficient discovery process, the Court ordered "[a]ll parties to proceed by way of formal deposition of Plaintiffs' treating physicians." *Id .* at p. 18.

FN1. *Stempler v. Speidell,* 100 N.J. 368, 495 A.2d 857 (1985).

The same issue was presented to the district court in *In re NuvaRing Products Liability Litigation,* 2009 WL 775442 (E.D.Mo., 2009). The *NuvaRing* Court

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2010 WL 320064 (N.D.Ohio)
**(Cite as: 2010 WL 320064 (N.D.Ohio))**

declined to allow defendants *ex parte* access to plaintiffs' healthcare providers because the defendants had alternative methods of obtaining this information. However, the plaintiffs in *NuvaRing* agreed with the proposed limitations suggested by Defendants and based upon that agreement, Judge Sipple implemented those limitations in his order. *Id.* at *2.

**\*2** The present litigation presents slightly different circumstances from those in *Gaus* and *NuvaRing.* Unlike the parties in *Gaus,* the present litigation is focused on the post-label cases (a significantly smaller number), and focused on the bellwether cases, only two of which will be selected for trial in mid–2010. This Court does not envision significant discovery disputes or hearings which will overwhelm the judicial process. Finally, unlike the parties in *NuvaRing,* the parties herein were unsuccessful in reaching an agreement on resolution of the *ex parte* issue.

Based upon the experience with lead counsel in this litigation, the Court is of the opinion that lead counsel for both sides are experienced, professional and capable of conducting themselves in an appropriate manner befitting the legal profession. The Court will assume capable and mature attorneys such as Plaintiffs' counsel will not act in a manner which would result in woodshedding or gaining an unfair advantage by ambush when engaged in ex *parte* contact with treating physicians. Such conduct will not be tolerated.

In the absence of an agreement between the parties to resolve this issue, the Court, after much consideration, adopts the approach of both Judges Sipple and Fallon [FN2] allowing Plaintiffs' counsel to have *ex parte* contact with treating physicians with the following limitations. Specifically, Plaintiffs' counsel may meet *ex parte* to discuss the physicians' records, course of treatment and related matters, but not as to liability issues or theories, product warnings, Defendant research documents or related materials. Violations of this approach, as stated above, will result in

sanctions.

> FN2. *In re Vioxx,* 230 F.R.D. 473 (E.D.La.2005).

Accordingly, and for the reasons set forth above, Defendants' motion to regulate *ex parte* contacts with Plaintiffs' treating physicians (Doc. No. 399) is granted in part.

IT IS SO ORDERED.

N.D.Ohio,2010.
In re Ortho Evra Products Liability Litigation
Not Reported in F.Supp.2d, 2010 WL 320064 (N.D.Ohio)

END OF DOCUMENT

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

# Exhibit C

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY - TRENTON

```
------------------------------
                           :
DOROTHY and THOMAS HALL,    :    DOCKET NO. CV-06-5203(TJB)
                           :
          Plaintiffs,       :    TRENTON, NJ
                           :
     vs.                    :    October 13, 2010
                           :
BRISTOL-MEYERS SQUIBB CO.,  :
et al.,                     :
                           :
          Defendants.       :
                           :
------------------------------
```

TRANSCRIPT OF PROCEEDINGS HEARD BEFORE THE
HONORABLE JUDGE TONIANNE J. BONGIOVANNI, U.S.M.J.

TRANSCRIPT ORDERED BY:

    MARTIN J. HEALY, ESQ.,
    (Sedgwick, Detert, Moran & Arnold, LLP)

A P P E A R A N C E S:

    MICHAEL MILLER, ESQ.,
    Attorney for the Plaintiffs.

    TAYJES MATTHEW SHAH, ESQ.,
    Attorney for the Plaintiffs.

AudioEdge Transcription, L.L.C.
425 Eagle Rock Avenue
Roseland, New Jersey 07068
(973) 610-2310
www.audioedgetranscription.com

Case ID: 990500001
Control No.: 12020571

2

A P P E A R A N C E S:  (Continued)

     MARTIN J. HEALY, ESQ.,
     (Sedgwick, Detert, Moran & Arnold, LLP),
     Attorney for the Defendants.

     DANIEL S. PARISER, ESQ.,
       -- and --
     ANAND AGNESHWAR, ESQ.,
     Attorneys for the Defendants.

Case 3:06-cv-02441-CMR  Document 18-2  Filed 11/05/15  Page 26 of 68 PageID: 1585

<u>I N D E X</u>

<u>10/13/10</u>

<u>ARGUMENT</u>                                                    <u>Page</u>

    By Mr. Miller                                  13, 24, 45

    By Mr. Agneshwar                               19, 30, 48


<u>COURT DECISION</u>                                 50 (Reserved)

Case ID: 990500001
Control No.: 12020571

Case 3:0̶6̶-̶c̶v̶-̶0̶2̶1̶0̶3̶-̶D̶W̶-̶4̶J̶E̶  ̶D̶o̶c̶u̶m̶e̶n̶t̶ ̶7̶0̶1̶ Case 3:12-cv-02441-CMR  Document 18-2  Filed 11/05/15  Page 27 of 68  F̶i̶l̶e̶d̶ ̶0̶9̶/̶2̶1̶/̶7̶  ̶P̶a̶g̶e̶ ̶4̶0̶ ̶o̶f̶ ̶8̶4̶ ̶ PageID: 1586

Colloquy                                    4

1          THE COURT:  Okay.  Good morning.  We're here in the

2     matter of Hall, et cetera, et cetera.

3          Can I have appearances, please?

4          MR. MILLER:  Good morning, Your Honor.  Michael

5     Miller on behalf of the plaintiff.

6          MR. SHAH:  Tayjes Shah on behalf of the plaintiff.

7          MR. HEALY:  Martin Healy, Sedgwick, Detert, Moran &

8     Arnold on behalf of defendants.

9          THE COURT:  Good morning.

10         MR. PARISER:  Daniel Pariser with Arnold & -- Arnold

11    & Porter on behalf of the defendants.

12         MR. AGNESHWAR:  Anand Agneshwar on behalf of Arnold &

13    Porter on behalf of the defendants -- from Arnold & Porter.

14         THE COURT:  Great.

15         MR. AGNESHWAR:  Thank you.

16         THE COURT:  Okay.  I have your check sheet of the

17    talking points that we have for today's hearing.  And I -- I

18    appreciate your providing this to me.  Let me just share with

19    you my thoughts on how this morning should go.  I've allotted

20    -- I shouldn't tell you how much time I've allotted because

21    then you'll use it all, but I've made sure that we'll have some

22    uninterrupted time together.

23         And what I thought I would do would be address in a

24    moment Number 5, the issue regarding the ex parte

25    communications.  And Number 4, I will need to hear argument at

Case ID: 990500001
Control No.: 12020571

1     some point on the relevance of the post-2007 documents.  But I

2     thought that after I talk about Number 5 that I would leave you

3     folks to see if you could come up with some agreement to narrow

4     some of these issues.

5          For example, I know that the issue of how many

6     custodial files should be reviewed, that I have the argument

7     that that was agreed upon that it would be 15.  And now they're

8     seeking to have it expanded to 30.  But there doesn't seem to

9     have been an exchange about whether or not there are specific

10    individuals who might be more -- the more important folks to be

11    targeted.  And maybe that's limited to five.  So I think that,

12    practically speaking, and not trying to be punitive, but I

13    think, practically speaking, counsel should have a dialogue,

14    and you might be able to sort things out.

15          Similarly, I think that the issues with the schedule,

16    once we talk about what we do with the treating physicians,

17    that you should be able to come to some agreement on a

18    schedule.  And I know you worked really well previously in that

19    regard.  And I do recognize let me say that there is that

20    footnote that the production time is going to be impacted with

21    whether or not I expand beyond the 2007 documents.  That that I

22    recognize would be time consuming and would certainly alter

23    what happens.

24          And, as I sit here, I have -- I am not predisposed to

25    one decision or another.  That is something I really do want to

Case ID: 990500001
Control No.: 12020571

1    have argument on, and I want to take another look at the case

2    law.  So it's not likely you're going to have a decision from

3    me today on that issue.  I recognize how important it is.  But

4    if you could build in perhaps some time in your schedule that

5    in the event I do determine that 2007 onward documents are

6    going to be produced, that perhaps you would add X amount of

7    time to the schedule.  So that's my thought.

8           Turning to perhaps the easier issue with the motion

9    to dismiss, I'm going to grant defendants' leave to file, which

10   is essentially all you're asking me.  I'd be hard pressed to

11   preclude you from doing that unless I felt that it was already

12   raised.  And by the time I went through the analysis of

13   determining whether or not it's something likely to be futile,

14   you may as well file the motion.  Because that essentially is

15   a dispositive motion that should be brought before Judge

16   Wolfson anyway.  So when you're dealing with your schedule,

17   just let me know when you're going to be ready to file.  And,

18   obviously -- it's not obviously; let me state it explicitly.

19   I'm making no judgment at all on the merits of it.  But it's

20   just whether or not I could preclude you as of right to -- to

21   file.  So I'm not going to do that.

22          The issue with the ex parte contacts with the doctors

23   I've read all of the position papers.  I have read all of the

24   cases from Nuvaring, through Ortho, Baycol, Petrillo that

25   you've cited, IBM, and I am inclined to adopt the reasoning I

Case ID: 990500001

Control No.: 12020571

1  believe it's of I think it was Judge Cass from the <u>Ortho</u>

2  <u>Evra</u> case that I will allow plaintiffs to have ex parte contact

3  with the treating physicians, but limited solely to the

4  discussions of the physicians' records, the course of

5  treatment, and related matters, but not as to liability issues,

6  or theories, product warnings, or defendant research documents

7  or related materials.  So that's my ruling on the ex parte

8  communications.

9         In terms of their depositions, I believe that it

10 makes sense, as with most depositions, that before you go

11 forward, the parties should have all, if not -- at least the

12 bulk, if not all of the documents that are going to be produced

13 in any litigation.  I think it's always risky to go forward,

14 unless it's really crystal clear that it's not likely that this

15 witness is going to have anything to do with these documents

16 because we could result in a do over.

17        So I think that based on how our system is designed,

18 and if we don't lose sight of that, the idea is to truth seek

19 and to give both parties the opportunity to engage in that

20 truth seeking missive.  And it makes perfect sense to me that

21 the plaintiffs these are their -- their clients' doctors.  They

22 should be able to have access to the doctors to be able to talk

23 to them about how they treated them, and what certain records

24 mean.

25        But I don't think that it's fair for them to have ex

Case ID: 990500001
Control No.: 12020571

1   parte communications with them, and challenging them, and

2   showing them perhaps studies that might be developed -- might

3   have been developed and produced by the defendants, unless the

4   defendants have equal access to them.  And I think the best way

5   to do that is in a deposition, after everyone is armed with all

6   of this material and ammunition, and you can pepper the doctors

7   and challenge them, and torture them if assuming you can even

8   get them here.  I know how tough it is when we subpoena

9   doctors.  But, once you produce them, and -- and you decide who

10  you really want to produce, then you can both have at them, to

11  use that expression, prior to trial.

12          So that's where I come down on that.  Any questions

13  from either side?

14          MR. MILLER:  No, Your Honor.  Not at this time.

15          MR. AGNESHWAR:  No, Your Honor.

16          THE COURT:  So, again, what I thought I would do is

17  just leave you folks.  I have a jury room that I could put you

18  in, but, quite frankly, it's not as spacious as this is.  And

19  if it were just limited to the folks around the table, that's

20  fine.  But if you want to have everyone available, you know, I

21  just would suggest you stay here.  You're welcome to move

22  things around.  We have a small little coffee shop downstairs.

23  I have no problem with you bringing up coffee or a nosh, or

24  whatever.  Just if you drop anything on my carpet, tell me, so

25  I can come out with my carpet cleaner.  And then when you're

Case ID: 990500001
Control No.: 12020571

C E R T I F I C A T I O N

      I, Charlene P. Scognamiglio, the assigned transcriber, do hereby certify that the foregoing transcript of proceedings in the U.S. District Court, on October 13, 2010, on CD No. 10/13/10, Index Nos. 10:14:43 a.m. to 10:23:33 a.m., and Index Nos. 11:45:51 a.m. to 12:43:19 p.m., is prepared in full compliance with the current Transcription Format for Judicial Proceedings and is a true and accurate non-compressed transcript of the proceedings to the best of my knowledge and ability.


  S/ Charlene P. Scognamiglio     October 22, 2010

Charlene P. Scognamiglio, AD/T #473    Date

AudioEdge Transcription, L.L.C.

# Exhibit D



Slip Copy, 2011 WL 9995561 (N.D.Ala.)
**(Cite as: 2011 WL 9995561 (N.D.Ala.))**

Only the Westlaw citation is currently available.

United States District Court,
N.D. Alabama,
Southern Division.
In re CHANTIX (VARENICLINE) PRODUCTS
LIABILITY LITIGATION.
This Order Relates To: All Cases.

No.: 2:09–CV–2039–IPJ.
MDL No. 2092.
June 30, 2011.

**ORDER**

INGE PRYTZ JOHNSON, District Judge.

**\*1** A status conference was held in the above case on June 28, 2011, at which Lead Counsel for plaintiffs and Lead Counsel for defendant were present in person, and many individual plaintiffs' counsel were present in person or by telephone, and wherein, or as a result of, the following proceedings were held and actions taken:

With the agreement of the parties, it is Ordered by the court that the next status conference shall be held July 29, 2011, at 10:00 a.m., in Florence, Alabama.

At the status conference held June 28, 2011, the court received a report on the items listed on the parties' proposed agenda. The parties informed the court that they were working together to resolve their differences regarding privilege log matters, and would continue to do so.

As to Agenda item number 3.b., concerning the status of discovery pursuant to Pretrial Order No. 4, counsel informed the court that the parties are attempting to resolve their differences concerning the defendant's production of Adverse Event data and documents post-dating July 2009. Should the parties and their counsel be unable to resolve this issue, the same shall be set as an Agenda item for the court's status conference in July 2011, and the parties are given leave to file memoranda concerning their respective positions on this issue on or before July 25, 2011.

Regarding the status of plaintiff fact sheet production, Agenda item number 3.c., the defendant informed the court that approximately 60 plaintiffs' fact sheets remain deficient in some significant manner. Counsel for defendant shall file appropriate motions as needed to resolve these deficiencies.

Item Four on the parties' Agenda concerns the issue of *ex parte* contact with the plaintiffs' physicians, which the parties briefed prior to the status conference. *See* defendant's memorandum concerning *ex parte* contact with physicians (doc. 294) and plaintiffs' memorandum of law in opposition to defendant's request seeking permission to communicate, *ex parte,* with plaintiffs' healthcare providers (doc. 293). Although neither the plaintiffs nor the defendant filed a motion to allow or disallow such communications, the defendant did make an oral motion to be allowed to contact plaintiffs' physicians, as set out in defendant's memorandum, and the court heard oral argument in support of and in opposition to said oral motion. The parties agree that they seek a global approach to this issue, rather than the court applying the law of the underlying jurisdictions on a case by case basis.

The defendant seeks to speak *ex parte* to the plaintiffs' individual physicians who actually prescribed Chantix for each of the bellwether plaintiffs, although the defendant stated in both its memorandum and in open court that it does not seek to speak to those physicians about their actual care of the individual

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2011 WL 9995561 (N.D.Ala.)
**(Cite as: 2011 WL 9995561 (N.D.Ala.))**

plaintiffs. Rather, the defendant asserts it seeks to question these nonparty physicians concerning the physicians general prescribing practices and factual information that is in the public domain, such as labeling and promotional materials. The plaintiffs object to any such *ex parte* communications, asserting they have not waived "the physician patient privilege." Plaintiffs' memorandum, at 5.

**\*2** At the status conference, the plaintiffs argued that defendant already knows plaintiffs' doctors prescription practices, because the defendant's representatives meet with these doctors on a regular basis. Similarly, the plaintiffs argued that the defendant already knows what promotional materials the plaintiffs' physicians have received, because the defendant is the source of these materials. Furthermore, the plaintiffs assert that the doctors have already reported to the defendant concerning the plaintiffs' adverse events.

According to the defendant, the cases selected for bellwether trials fall roughly into equal halves regarding the permissibility of defendant having *ex parte* contact with the plaintiffs' physicians based on the underlying jurisdiction of each of those cases. In other words, under state law in about half the bellwether cases, the defendant has the right to have *ex parte* communications with a plaintiff's non-party physician. The defendant stressed that it does not seek to have such *ex parte* conversations with plaintiffs' treating physicians concerning the individual plaintiffs' medical care. By the same token, the court is aware that the defendant already has information and medical records for the individual plaintiffs as the plaintiffs have completed detailed individual fact sheets and provided defendant with access to their individual medical records.

The defendant argued that since it has the right to talk to the individual plaintiffs' treating physicians in roughly half the bellwether cases, and that since it is willing to "sacrifice" this right in exchange for being able to speak to all plaintiffs' physicians about their generalized knowledge and prescribing practices, that the plaintiffs' counsel should be prohibited from speaking *ex parte* with treating physicians concerning defendant's internal documents or other information that is not publicly available.

Having considered the respective arguments of the parties, as well as their written memoranda, the court notes that it has no authority to make a physician talk to both plaintiffs' counsel and defense counsel in a fair and equal manner. Clearly, in any jurisdiction, the plaintiffs' counsel may have unlimited conversations with plaintiffs' individual doctors about plaintiffs' treatment. As to access to plaintiff's treating physicians by defense counsel, in some jurisdictions there is a statutory physician-patient privilege, in some jurisdictions there is a common-law physician-patient privilege, and in some jurisdictions, no such privilege exists.

The purpose of statutory or common law privileges protecting communications between a doctor and his patient is to promote greater freedom of communication between physicians and their patients by providing the relationship with a "cloak of confidence" and to prevent disclosure of information concerning the patient which might result in his or her humiliation, embarrassment or disgrace. However, as one court aptly noted;

**\*3** The privilege was never intended ... to be used as a trial tactic by which a party entitled to invoke it may control to his advantage the timing and circumstances of the release of information he must inevitably see revealed at some time.

*Doe v. Eli Lilly & Co.,* 99 F.R.D. 126, 128 ( D.D.C. 1983). Yet the court is struck by how the parties before it are attempting to posture themselves and to control the information provided a future trial witness to their own advantage.

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2011 WL 9995561 (N.D.Ala.)
**(Cite as: 2011 WL 9995561 (N.D.Ala.))**

Plaintiffs' counsel also suggested to the court that waiting until deposition to show plaintiffs' physicians documents of the defendant will require each of these depositions to take two days rather than just several hours. However, the court notes that under the parties' various proposals, the doctors in question will be contacted not once for a deposition, but up to three separate occasions. Furthermore, what both the defendant and plaintiffs seek to obtain through *ex parte* communications can easily be gotten through depositions of these doctors.

Regardless of whether an actual privilege exists, "patients enjoy a right to privacy and confidentiality with regard to disclosures made within the doctor-patient relationship." *See e.g., Ex parte St. Vincent's Hospital,* 991 So.2d 200, 208 (Ala.2008); *In re Kugel Mesh Hernia Repair Patch Litigation,* 2008 WL 2420997 (D.R.I.2008) (denying defendant *ex parte* communications "in order to preserve Plaintiffs' time honored privilege in their communications with their healthcare providers"); *In re Vioxx Products Liability Litigation,* 230 F.R.D. 473, 476 (E.D.La.2005)(holding that allowing defense counsel access to plaintiffs' treating physicians "without the approval of the patient, other than in a deposition or pursuant to a court order, would be in direct conflict with the time honored doctor-patient confidential relationship which has been recognized and protected in both Western and Eastern civilization for over 2000 years").

The court has considered the wisdom of United States District Judge Eldon Fallon's words in a factually similar situation. He stated

The Court, upon further reflection, now feels that the just option in this case is to protect the relationship between a doctor and patient by restricting defendants from conducting ex parte communications with Plaintiffs' treating physicians but allow-

ing Plaintiffs' counsel to engage in ex parte interviews with those doctors who have not been named as defendants. This approach appears, at first glance, to be one sided and unfair. However, in actuality and as a practical matter, it is not. This modification does not leave the Defendants without any access to information. The Defendants still are entitled to all of the medical records of the Plaintiffs as well as the Plaintiff Profile Forms setting forth each Plaintiff's detailed medical history. The Defendants can also continue to exercise their right to depose the Plaintiffs' treating physicians or confer with them in the presence of Plaintiffs' counsel. Furthermore, as a practical matter, the Defendants already have information, including documentation, regarding what its representatives told the treating physicians about Vioxx. Therefore, the Defendants do not need the doctors to tell them in ex parte conferences what they already know.

**\*4** *In re Vioxx Products Liability Litigation,* 230 F.R.D. 473, 477 (E.D.La.2005).

Having considered the foregoing, the court concludes that neither plaintiffs' counsel nor defense counsel shall be allowed unfettered access to the plaintiffs' treating physicians. Although plaintiffs' counsel is clearly permitted by law to have *ex parte* communications with their clients' treating physicians, the court **ORDERS** such communications are limited to the individual **care** of the individual plaintiffs, such as the plaintiffs' **treatment, medical records** and **conversations with their health care providers.** Plaintiffs' counsel shall **not discuss defendant's internal documents** with plaintiffs' health care providers outside of a deposition or other on the record setting. Similarly, the court **ORDERS** that defendant and defense counsel shall not meet *ex parte* with plaintiffs' treating physicians regarding any matters, generalized or specific to the plaintiffs' individual claims.

**DONE** and **ORDERED.**

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2011 WL 9995561 (N.D.Ala.)
**(Cite as: 2011 WL 9995561 (N.D.Ala.))**

N.D.Ala.,2011.
In re Chantix (Varenicline) Products Liability Litiga-
tion
Slip Copy, 2011 WL 9995561 (N.D.Ala.)

END OF DOCUMENT

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

# Exhibit E



Not Reported in F.Supp.2d, 2009 WL 775442 (E.D.Mo.)
**(Cite as: 2009 WL 775442 (E.D.Mo.))**

H

Only the Westlaw citation is currently available.

United States District Court,
E.D. Missouri,
Eastern Division.
In re NUVARING PRODUCTS LIABILITY LITI-
GATION.

No. 4:08MD1964 RWS.
March 20, 2009.

### MEMORANDUM AND ORDER

RODNEY W. SIPPEL, District Judge.

*1 Plaintiffs in this lawsuit assert that they were injured when they used Defendants' birth control product called NuvaRing. Defendants (collectively "Organon") filed a motion for a qualified protective order that would allow them to have *ex parte* communications with Plaintiffs' healthcare providers. Plaintiffs oppose any *ex parte* communications by Organon. Because Organon has adequate methods of obtaining information from Plaintiffs' healthcare providers without conducting *ex parte* interviews I will deny the motion for a qualified protective order.

In its papers in support of its motion Organon correctly notes that it will need to obtain information in discovery regarding each plaintiff's treatment and care regarding the use of NuvaRing, as well as, any past or present health conditions which may be relevant to a plaintiff's claimed injury. To that end, numerous physicians and other healthcare providers will be identified as having potential relevant information concerning each plaintiff's claims.

Organon's motion seeks approval from the Court to conduct *ex parte* interviews with Plaintiffs' healthcare providers which will help "Defendants

assess the physician's knowledge about the plaintiff's medical condition, health history and treatment as may be relevant to Plaintiffs' claimed injuries, and, therefore, will greatly facilitate the discovery process." (Defs.' Mem. in Supp. at 4.)

Missouri law and HIPPAA's regulations allow for limited *ex parte* contacts by defendants with a plaintiff's healthcare providers when plaintiff places his medical condition at issue. *See Brandt v. Pelican*, 856 S.W.2d 658 (Mo.1993) and C.F.R. § 164.512(e)(1)(ii)(A) & (B). However, the law in other states varies on whether a defendant may have *ex parte* contacts with a plaintiff's healthcare providers. Because Plaintiffs in this matter are residents of many different states, any *ex parte* order would, of necessity, need to permit motion practice on whether a particular state allowed such contacts and, if so, to what extent.

I have read the parties' papers and reviewed the authorities upon which they rely. In addition, the parties have further urged their positions in oral argument. While I acknowledge Organon's desire to expedite this litigation through the use of *ex parte* contacts I find that I am in complete agreement with United States District Judge Eldon Fallon's ultimate decision on facing a similar motion in the *In re Vioxx Products Liability Litigation*, MDL 1657.

Just as Organon argued in the present case, defendants in the *Vioxx* litigation asserted that treating physicians are fact witnesses and both sides should have equal access to fact witnesses for *ex parte* contacts.

Judge Fallon initially entered an order in the *Vioxx* litigation that allowed either party to interview a plaintiff's prescribing physician upon notifying the opposing party five days in advance of the interview. The opposing counsel would then be able to attend the

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2009 WL 775442 (E.D.Mo.)
**(Cite as: 2009 WL 775442 (E.D.Mo.))**

interview. If opposing counsel chose not to attend, the notifying party was free to conduct an *ex parte* interview. The plaintiffs moved for Judge Fallon to reconsider his order.

**\*2** A few weeks later, Judge Fallon issued a new order which allowed plaintiffs to conduct *ex parte* interviews with any treating physicians who were not named defendants and barred defendants from conducting any *ex parte* interviews. *In re Vioxx,* 230 F.R.D. 473 (E.D.La.2005).

Judge Fallon noted that the treaters at issue were really both fact and expert witnesses. He stated that "facts" that the treating physicians had knowledge of "were discovered during the time of a private, privileged relationship" between a patient and his doctor. *Id.* at 476. After reciting the long standing and observed protection of the physician-patient privilege, Judge Fallon concluded that the best course was to preserve that privilege by not allowing defendants to conduct *ex parte* interviews of plaintiffs' healthcare providers:

The Court, upon further reflection, now feels that the just option in this case is to protect the relationship between a doctor and patient by restricting defendants from conducting ex parte communications with Plaintiffs' treating physicians but allowing Plaintiffs' counsel to engage in ex parte interviews with those doctors who have not been named as defendants. This approach appears, at first glance, to be one sided and unfair. However, in actuality and as a practical matter, it is not. This modification does not leave the Defendants without any access to information. The Defendants still are entitled to all of the medical records of the Plaintiffs as well as the Plaintiff Profile Forms setting forth each Plaintiff's detailed medical history. The Defendants can also continue to exercise their right to depose the Plaintiffs' treating physicians or confer with them in the presence of Plaintiffs' counsel. Furthermore, as a practical matter, the Defendants already have in-

formation, including documentation, regarding what its representatives told the treating physicians about Vioxx. Therefore, the Defendants do not need the doctors to tell them in ex parte conferences what they already know.

*Id.* at 477.

I agree with Judge Fallon's thorough analysis and conclusion. In order to preserve Plaintiffs' time honored privilege in their communications with their healthcare providers I will deny Organon's motion to have *ex parte* contacts with these providers. As Judge Fallon points out, Organon is not without the ability to discover information from these providers through the normal litigation process. Organon will be able to obtain Plaintiffs' medical records and Fact Sheets and is free to depose healthcare providers in the ordinary course of this litigation. Organon may also interview its own representatives regarding the documents and information that they presented to Plaintiffs' providers.

In its papers and at oral argument Organon has requested that, if only Plaintiffs are allowed *ex parte* contacts with their healthcare providers, Plaintiffs must: tell the providers that any interviews are voluntary and can be declined; the provider must be presented with a medical authorization that is compliant with HIPPA and signed by the plaintiff; and the interview should be limited to the particular plaintiff's medical condition at issue in the current litigation. Plaintiffs agreed that those guidelines would be appropriate.[FN1]

FN1. *See* Hr'g Tr. of March 5, 2009, p. 32.

**\*3** I find that those limitations on any interviews conducted by the Plaintiffs are fair and appropriate and shall apply to any such interviews.

Accordingly,

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2009 WL 775442 (E.D.Mo.)
**(Cite as: 2009 WL 775442 (E.D.Mo.))**

     **IT IS HEREBY ORDERED that** Defendants'
motion for a protective order to permit Defendants to
have *ex parte* contacts with Plaintiffs' healthcare pro-
viders [# 39] is **DENIED.**

E.D.Mo.,2009.
In re Nuvaring Products Liability Litigation
Not Reported in F.Supp.2d, 2009 WL 775442
(E.D.Mo.)

END OF DOCUMENT

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

# Exhibit F

SILLS CUMMIS & GROSS P.C.
One Riverfront Plaza
Newark, New Jersey 07102
(973) 643-7000
-and-
HOLLINGSWORTH LLP
1350 I Street, NW
Washington, DC 20005
(202) 898-5800
Attorneys for Defendants
Novartis Pharmaceutical Corporation



| | |
|---|---|
| WALTER GAUS,<br><br>                    Plaintiff,<br><br>vs.<br><br>NOVARTIS PHARMACEUTICALS<br>CORP.,<br><br>                    Defendant. | SUPERIOR COURT OF NEW JERSEY<br>LAW DIVISION – MIDDLESEX COUNTY<br>DOCKET NO. MID-L-007014-07-MT<br>*(This document relates to all cases on the<br>attached list.)*<br>CASE NO. 278<br><br>CIVIL ACTION<br>In re Aredia® and Zometa® Litigation<br><br>**ORDER** |

        THIS MATTER having been opened by the Court by Sills Cummis & Gross P.C.,

attorneys for defendant Novartis Pharmaceuticals Corporation ("NPC"), seeking an order

permitting *ex parte* contacts with Plaintiffs' treating physicians, and the Court having reviewed

the papers submitted on this motion,                                            , and good cause

having been shown,

        IT IS on this 29ᵗʰ day of October, 2009,

        ORDERED that NPC's motion be and hereby is granted; and it is further

        ORDERED that NPC is permitted to conduct *ex parte* interviews with plaintiffs' treating

and prescribing physicians; and it is further

**DENIED** *

ORDERED that a copy of this Order be served upon all counsel within seven (7) days of the date hereof.

_____ 6/24/09
Hon. Jessica R. Mayer, ~~P.T.C.~~ J. s.c.

____ Opposed

____ Unopposed

**OPPOSED**

\* For the reasons set forth in the court's written memorandum.

2

## List of Related Cases

| Docket | Case | Filing Date |
|---|---|---|
| MID-L-007014-07-MT | Gaus, et al. v. Novartis Pharmaceuticals Corp, et al. | 8/16/2007 |
| MID-L-007017-07-MT | Restivo v. Novartis Pharmaceuticals Corp | 8/16/2007 |
| MID-L-007020-07-MT | Milne v. Novartis Pharmaceuticals Corp | 8/16/2007 |
| MID-L-007021-07-MT | Allmond v. Novartis Pharmaceuticals Corp | 8/16/2007 |
| MID-L-007023-07-MT | Fokas, et al. v. Novartis Pharmaceuticals Corp, et al. | 8/16/2007 |
| MID-L-007665-07-MT | Campbell, et al. v. Novartis Pharmaceuticals Corp | 9/6/2007 |
| MID-L-007667-07-MT | Knopp, et al. v. Novartis Pharmaceuticals Corp | 9/6/2007 |
| MID-L-007668-07-MT | Isaacs, et al. v. Novartis Pharmaceuticals Corp | 9/6/2007 |
| MID-L-007669-07-MT | Hitchcock, et al. v. Novartis Pharmaceuticals Corp | 9/6/2007 |
| MID-L-007670-07-MT | Meng v. Novartis Pharmaceuticals Corp | 9/6/2007 |
| MID-L-007954-07-MT | Ward, et al. v. Novartis Pharmaceuticals Corp | 9/19/2007 |
| MID-L-007956-07-MT | Walton v. Novartis Pharmaceuticals Corp | 9/19/2007 |
| MID-L-007957-07-MT | Pensabene v. Novartis Pharmaceuticals Corp | 9/19/2007 |
| MID-L-007958-07-MT | Kearney, et al. v. Novartis Pharmaceuticals Corp | 9/19/2007 |
| MID-L-008005-07-MT | Zarro, et al. v. Novartis Pharmaceuticals Corp | 9/20/2007 |
| MID-L-008662-07-MT | Mueller v. Novartis Pharmaceuticals Corp | 10/10/2007 |
| MID-L-008895-07-MT | Bermender v. Novartis Pharmaceuticals Corp, et al. | 10/19/2007 |
| MID-L-009369-07-MT | Brown v. Novartis Pharmaceuticals Corp, et al. | 11/7/2007 |
| MID-L-009866-07-MT | Barwell, et al. v. Novartis Pharmaceuticals Corp | 11/20/2007 |
| MID-L-009867-07-MT | Davies v. Novartis Pharmaceuticals Corp | 11/20/2007 |
| MID-L-010188-07-MT | Severe v. Novartis Pharmaceuticals Corp | 12/4/2007 |
| MID-L-010189-07-MT | Richardson v. Novartis Pharmaceuticals Corp | 12/4/2007 |
| MID-L-010194-07-MT | Tobias v. Novartis Pharmaceuticals Corp | 12/4/2007 |
| MID-L-010208-07-MT | Schmitt v. Novartis Pharmaceuticals Corp | 12/4/2007 |
| MID-L-010209-07-MT | McPhilomy v. Novartis Pharmaceuticals Corp | 12/4/2007 |
| MID-L-010210-07-MT | Schneider v. Novartis Pharmaceuticals Corp | 12/4/2007 |
| MID-L-010211-07-MT | Leadman v. Novartis Pharmaceuticals Corp | 12/4/2007 |
| MID-L-010212-07-MT | Ferguson v. Novartis Pharmaceuticals Corp | 12/4/2007 |
| MID-L-010213-07-MT | Jones v. Novartis Pharmaceuticals Corp | 12/4/2007 |
| MID-L-010214-07-MT | McCully v. Novartis Pharmaceuticals Corp | 12/4/2007 |
| MID-L-000363-08-MT | MacMurtry v. Novartis Pharmaceuticals Corp | 1/17/2008 |
| MID-L-000365-08-MT | Stoller v. Novartis Pharmaceuticals Corp | 1/17/2008 |
| MID-L-000626-08-MT | Smits v. Novartis Pharmaceuticals Corp | 1/25/2008 |
| MID-L-000628-08-MT | Warren v. Novartis Pharmaceuticals Corp | 1/25/2008 |
| MID-L-000631-08-MT | Fisher, et al v. Novartis Pharmaceuticals Corp | 1/25/2008 |
| MID-L-001517-08-MT | Hassman v. Novartis Pharmaceuticals Corp | 1/30/2006 |
| MID-L-001552-08-MT | Stein v. Novartis Pharmaceuticals Corp | 2/27/2008 |
| MID-L-001555-08-MT | Teel v. Novartis Pharmaceuticals Corp | 2/27/2008 |
| MID-L-001815-08-MT | Irby v. Novartis Pharmaceuticals Corp | 3/29/2006 |
| MID-L-001817-08-MT | Weill v. Novartis Pharmaceuticals Corp | 3/10/2008 |
| MID-L-001820-08-MT | Harary v. Novartis Pharmaceuticals Corp | 5/12/2006 |

Case ID: 990500001
Control No.: 12020571

## List of Related Cases

| Docket | Case | Filing Date |
|---|---|---|
| MID-L-001821-08-MT | Scalamoni v. Novartis Pharmaceuticals Corp | 8/25/2006 |
| MID-L-001835-08-MT | Bessemer, et al. v. Novartis Pharmaceuticals Corp | 1/30/2006 |
| MID-L-001843-08-MT | Oakes, et al. v. Novartis Pharmaceuticals Corp, et al. | 6/23/2006 |
| MID-L-001872-08-MT | Harris, et al. v. Novartis Pharmaceuticals Corp | 1/3/2006 |
| MID-L-001899-08-MT | Lecompte, et al. v. Novartis Pharmaceuticals Corp | 1/12/2007 |
| MID-L-002013-08-MT | Armstead v. Novartis Pharmaceuticals Corp | 3/17/2008 |
| MID-L-002015-08-MT | Scala v. Novartis Pharmaceuticals Corp | 3/17/2008 |
| MID-L-002023-08-MT | Koppel, et al. v. Novartis Pharmaceuticals Corp | 5/14/2007 |
| MID-L-002050-08-MT | Gillispie v. Novartis Pharmaceuticals Corp | 7/30/2007 |
| MID-L-002258-08-MT | Hassell v. Novartis Pharmaceuticals Corp | 3/28/2008 |
| MID-L-002262-08-MT | Holloway v. Novartis Pharmaceuticals Corp | 3/28/2008 |
| MID-L-003156-08-MT | Schoenfeldt v. Novartis Pharmaceuticals Corp | 5/14/2007 |
| MID-L-003276-08-MT | Moghaddam v. Novartis Pharmaceuticals Corp | 4/29/2008 |
| MID-L-003277-08-MT | Dougherty v. Novartis Pharmaceuticals Corp | 4/29/2008 |
| MID-L-003278-08-MT | Drowns v. Novartis Pharmaceuticals Corp | 4/29/2008 |
| MID-L-003302-08-MT | Gilbert v. Novartis Pharmaceuticals Corp | 4/30/2008 |
| MID-L-003385-08-MT | Chance v. Novartis Pharmaceuticals Corp | 5/1/2008 |
| MID-L-003386-08-MT | Aleman v. Novartis Pharmaceuticals Corp | 5/1/2008 |
| MID-L-003388-08-MT | Dorn v. Novartis Pharmaceuticals Corp | 5/1/2008 |
| MID-L-003391-08-MT | Davis v. Novartis Pharmaceuticals Corp | 4/28/2008 |
| MID-L-003393-08-MT | Traphagen v. Novartis Pharmaceuticals Corp, et al. | 4/30/2008 |
| MID-L-003395-08-MT | Wiesner, et al. v. Novartis Pharmaceuticals Corp, et al. | 4/30/2008 |
| MID-L-003510-08-MT | Bryant v. Novartis Pharmaceuticals Corp | 1/17/2008 |
| MID-L-003655-08-MT | Baughman v. Novartis Pharmaceuticals Corp | 5/12/2008 |
| MID-L-003656-08-MT | Gordon v. Novartis Pharmaceuticals Corp | 5/12/2008 |
| MID-L-003657-08-MT | Kent v. Novartis Pharmaceuticals Corp | 5/12/2008 |
| MID-L-003953-08-MT | Perrone v. Novartis Pharmaceuticals Corp | 5/20/2008 |
| MID-L-003954-08-MT | Getz v. Novartis Pharmaceuticals Corp | 5/20/2008 |
| MID-L-003955-08-MT | Rheinheimer v. Novartis Pharmaceuticals Corp | 5/20/2008 |
| MID-L-004163-08-MT | Hughes v. Novartis Pharmaceuticals Corp | 3/28/2006 |
| MID-L-004224-08-MT | Shelton v. Novartis Pharmaceuticals Corp | 5/28/2008 |
| MID-L-004226-08-MT | Rindy v. Novartis Pharmaceuticals Corp | 5/28/2008 |
| MID-L-004228-08-MT | Smith v. Novartis Pharmaceuticals Corp | 5/28/2008 |
| MID-L-004370-08-MT | McGuckin v. Novartis Pharmaceuticals Corp | 5/30/2008 |
| MID-L-004946-08-MT | Auxier v. Novartis Pharmaceuticals Corp | 6/19/2008 |
| MID-L-004948-08-MT | Garavel v. Novartis Pharmaceuticals Corp | 6/19/2008 |
| MID-L-004950-08-MT | Diliberto v. Novartis Pharmaceuticals Corp | 6/19/2008 |
| MID-L-005000-08-MT | Wolms v. Novartis Pharmaceuticals Corp | 6/20/2008 |
| MID-L-005001-08-MT | Tepper v. Novartis Pharmaceuticals Corp | 6/20/2008 |
| MID-L-005003-08-MT | Strickland v. Novartis Pharmaceuticals Corp | 6/20/2008 |
| MID-L-005688-08-MT | Gemmell v. Novartis Pharmaceuticals Corp | 7/15/2008 |

Case ID: 990500001
Control No.: 12020571

## List of Related Cases

| Docket | Case | Filing Date |
|---|---|---|
| MID-L-005689-08-MT | Beck v. Novartis Pharmaceuticals Corp | 7/15/2008 |
| MID-L-005690-08-MT | Thomas v. Novartis Pharmaceuticals Corp | 7/15/2008 |
| MID-L-005691-08-MT | Levine v. Novartis Pharmaceuticals Corp | 7/15/2008 |
| MID-L-006027-08-MT | Bagley v. Novartis Pharmaceuticals Corp | 7/23/2008 |
| MID-L-006030-08-MT | Hansen v. Novartis Pharmaceuticals Corp | 7/23/2008 |
| MID-L-006031-08- MT | Walsh v. Novartis Pharmaceuticals Corp | 7/23/2008 |
| MID-L-006603-08-MT | Carline v. Novartis Pharmaceuticals Corp | 8/13/2008 |
| MID-L-006604-08-MT | Benevento v. Novartis Pharmaceuticals Corp | 8/13/2008 |
| MID-L-006605-08-MT | Boone v. Novartis Pharmaceuticals Corp | 8/13/2008 |
| MID-L-006758-08-MT | McPherson v. Novartis Pharmaceuticals Corp | 8/19/2008 |
| MID-L-006759-08-MT | Marksbury v. Novartis Pharmaceuticals Corp | 8/19/2008 |
| MID-L-006761-08-MT | Marquez v. Novartis Pharmaceuticals Corp | 8/19/2008 |
| MID-L-006798-08-MT | Nicholson v. Novartis Pharmaceuticals Corp | 8/20/2008 |
| MID-L-006801-08-MT | Neal v. Novartis Pharmaceuticals Corp | 8/20/2008 |
| MID-L-006802-08-MT | Morris v. Novartis Pharmaceuticals Corp | 8/20/2008 |
| MID-L-006868-08-MT | Pettit v. Novartis Pharmaceuticals Corp | 8/21/2008 |
| MID-L-006872-08-MT | Kourafas v. Novartis Pharmaceuticals Corp | 8/21/2008 |
| MID-L-006873-08-MT | Stacy v. Novartis Pharmaceuticals Corp | 8/21/2008 |
| MID-L-006935-08-MT | Dahlman v. Novartis Pharmaceuticals Corp | 8/22/2008 |
| MID-L-006942-08-MT | Lewis v. Novartis Pharmaceuticals Corp | 8/22/2008 |
| MID-L-006943-08-MT | Mangels v. Novartis Pharmaceuticals Corp | 8/22/2008 |
| MID-L-007037-08-MT | Imburgia v. Novartis Pharmaceuticals Corp | 8/25/2008 |
| MID-L-007038-08-MT | Green v. Novartis Pharmaceuticals Corp | 8/25/2008 |
| MID-L-007041-08-MT | De La Fuente v. Novartis Pharmaceuticals Corp | 8/25/2008 |
| MID-L-007378-08-MT | Kresge v. Novartis Pharmaceuticals Corp | 9/9/2008 |
| MID-L-007435-08-MT | Hudson v. Novartis Pharmaceuticals Corp | 9/10/2008 |
| MID-L-007436-08-MT | Hyman v. Novartis Pharmaceuticals Corp | 9/10/2008 |
| MID-L-007437-08-MT | Gray v. Novartis Pharmaceuticals Corp | 9/10/2008 |
| MID-L-008050-08-MT | Baker, et. al. v. Novartis Pharmaceuticals Corp | 9/29/2008 |
| MID-L-008052-08-MT | Clawson, et. al. v. Novartis Pharmaceuticals Corp | 9/29/2008 |
| MID-L-008164-08-MT | Floyd v. Novartis Pharmaceuticals Corp | 10/2/2008 |
| MID-L-008165-08-MT | Anne v. Novartis Pharmaceuticals Corp | 10/2/2008 |
| MID-L-008166-08-MT | Carrion v. Novartis Pharmaceuticals Corp | 10/2/2008 |
| MID-L-008196-08-MT | Jackson v. Novartis Pharmaceuticals Corp | 10/3/2008 |
| MID-L-008197-08-MT | Jaynes v. Novartis Pharmaceuticals Corp | 10/3/2008 |
| MID-L-008220-08-MT | San Miguel v. Novartis Pharmaceuticals Corp | 10/6/2008 |
| MID-L-008222-08-MT | Heley v. Novartis Pharmaceuticals Corp | 10/6/2008 |
| MID-L-008223-08-MT | Fricke v. Novartis Pharmaceuticals Corp | 10/6/2008 |
| MID-L-008270-08-MT | Bosma v. Novartis Pharmaceuticals Corp | 10/7/2008 |
| MID-L-008271-08-MT | Jones v. Novartis Pharmaceuticals Corp | 10/7/2008 |
| MID-L-008272-08-MT | Lewis v. Novartis Pharmaceuticals Corp | 10/7/2008 |

Case ID: 990500001
Control No.: 12020571

## List of Related Cases

| Docket | Case | Filing Date |
|---|---|---|
| MID-L-008321-08-MT | Lynch v. Novartis Pharmaceuticals Corp | 10/8/2008 |
| MID-L-008324-08-MT | Schomer v. Novartis Pharmaceuticals Corp | 10/8/2008 |
| MID-L-008325-08-MT | Welch v. Novartis Pharmaceuticals Corp | 10/8/2008 |
| MID-L-008451-08-MT | Smith v. Novartis Pharmaceuticals Corp | 10/15/2008 |
| MID-L-008452-08-MT | Wilson v. Novartis Pharmaceuticals Corp | 10/15/2008 |
| MID-L-008453-08-MT | Woodard v. Novartis Pharmaceuticals Corp | 10/15/2008 |
| MID-L-009136-08-MT | DeSantis v. Novartis Pharmaceuticals Corp | 11/5/2008 |
| MID-L-009139-08-MT | Laney v. Novartis Pharmaceuticals Corp | 11/5/2008 |
| MID-L-009142-08-MT | Werner v. Novartis Pharmaceuticals Corp | 11/5/2008 |
| MID-L-02370-08-MT | Kelly, et al. v. Novartis Pharmaceuticals Corp | 10/11/2007 |
| MID-L-000223-09-MT | Compton, et.al. v. Novartis Pharmaceuticals Corp | 1/12/2009 |
| MID-L-000369-09-MT | McInerney v. Novartis Pharmaceuticals Corp | 1/16/2009 |
| MID-L-000371-09-MT | Gamble v. Novartis Pharmaceuticals Corp | 1/16/2009 |
| MID-L-000372-09-MT | Morningstar, et.al., v. Novartis Pharmaceuticals Corp | 1/16/2009 |
| MID-L-000705-09-MT | Carfagno v. Novartis Pharmaceuticals Corp | 1/30/2009 |
| MID-L-000754-09-MT | Lourenso v. Novartis Pharmaceuticals Corp | 2/2/2009 |
| MID-L-000757-09-MT | Pickett v. Novartis Pharmaceuticals Corp | 2/2/2009 |
| MID-L-001383-09-MT | Wilkowsky v. Novartis Pharmaceuticals Corp | 2/24/2009 |
| MID-L-001384-09-MT | Tolford, et al. v. Novartis Pharmaceuticals Corp, et al. | 2/24/2009 |
| MID-L-001761-09-MT | Dobson et al. v. Novartis Pharmaceuticals Corp, et al. | 3/9/2009 |
| MID-L-001763-09-MT | Slockish v. Novartis Pharmaceuticals Corp | 3/9/2009 |
| MID-L-001765-09-MT | Katterman v. Novartis Pharmaceuticals Corp | 3/9/2009 |
| MID-L-001766-09-MT | DiCicco et al. v. Novartis Pharmaceuticals Corp | 3/9/2009 |
| MID-L-001805-09-MT | Higgins, et al. v. Novartis Pharmaceuticals Corp | 3/10/2009 |
| MID-L-001952-09-MT | Bracamonte v. Novartis Pharmaceuticals Corp | 3/12/2009 |
| MID-L-001953-09-MT | Marchain v. Novartis Pharmaceuticals Corp | 3/12/2009 |
| MID-L-004858-09-MT | Moss v. Novartis Pharmaceuticals Corp | 6/9/2009 |
| MID-L-007182-09-MT | Harold, et al. v. Novartis Pharmaceuticals Corp | 8/26/2009 |

Case ID: 990500001
Control No.: 12020571

List of Related Cases

As to defendants Teva Parental Medicines, Inc., APP Pharmaceuticals, Inc., Hospira, Inc., and Bedford Laboratories, this Order is applicable to the following In re Zometa/Aredia cases:

| Docket | Case | Filing Date |
|---|---|---|
| MID-L-1761-09-MT | Dobson v. Novartis Pharmaceuticals Corp. | 3/9/2009 |
| MID-L-1763-09-MT | Slockish v. Novartis Pharmaceuticals Corp. | 3/9/2009 |
| MID-L-705-09-MT | Carfagno v. Novartis Pharmaceuticals Corp. | 1/30/2009 |
| MID-L-4858-09-MT | Moss v. Novartis Pharmaceuticals Corp. | 6/9/2009 |

Case ID: 990500001
Control No.: 12020571

# SUPERIOR COURT OF NEW JERSEY

CHAMBERS OF
JESSICA R. MAYER, J.S.C.
JUDGE



MIDDLESEX COUNTY COURT HOUSE
P.O. Box 964
NEW BRUNSWICK, NEW JERSEY 08903-964

### NOT FOR PUBLICATION WITHOUT THE
### APPROVAL OF THE COMMITTEE ON OPINIONS

### Memorandum of Decision on Defendant's
### Motion for *Ex Parte* Contacts with Plaintiffs' Treating Physicians

Gaus v. Novartis Pharmaceuticals Corp.
Docket No. L-7014-07MT (In re: Aredia and Zometa, Case No. 278)

| | |
|---|---|
| For Defendants: | Beth S. Rose, Esq. for Novartis Pharmaceuticals Corporation |
| | Katherine Latimer, Esq. for Novartis Pharmaceuticals Corporation |
| | Joe Hollingsworth, Esq. for Novartis Pharmaceuticals Corporation |
| | Neil S. Bromberg, Esq. for Novartis Pharmaceuticals Corporation |
| | Glenn S. Kerner, Esq. for Teva Parenteral Medicines, Inc. |
| | Steven A. Karg, Esq. for APP Pharmaceuticals, Inc. |
| | Ricky M. Guerra, Esq. for Hospira, Inc. |
| | Lauren E. Handler, Esq. for Bedford Laboratories |

| | |
|---|---|
| For Plaintiffs: | Michael L. Rosenberg, Esq. |
| | John J. Vecchione, Esq. |

| | |
|---|---|
| Dated: | October 29, 2009 |

### **Defendant's Motion**

On September 4, 2009, Defendant Novartis Pharmaceuticals Corporation ("NPC" or

"Defendant") filed a motion to engage in substantive *ex parte* contacts with the treating or

prescribing physicians of Plaintiff Walter Gaus and plaintiffs in all related cases (collectively

Case ID: 990500001
Control No.: 12020571

"Plaintiffs").[1]   Relying heavily on a similar order that was granted in a federal litigation involving Aredia® and Zometa® in 2006 in the United States District Court for the Middle District of Tennessee ("the MDL"), Defendant argues that permitting *ex parte* contacts will allow Defendant to forgo the deposition of some physicians and promote efficiency in the depositions that are conducted.

Defendant begins by informing the court of the MDL court's holding, which stated that Defendant, in that case, was permitted to engage in *ex parte* communications with plaintiffs' treating physicians in the following jurisdictions: Alabama, California, Georgia,[2] Kansas, Kentucky, Louisiana, Maryland, Massachusetts, Michigan, Missouri, New Jersey, New York, North Dakota, Ohio, Oklahoma, South Carolina, Texas, and Wisconsin.[3]   Defendant then cites the MDL Magistrate Judge's Order for the proposition that "[p]laintiffs' treating physicians are fact witnesses and [p]laintiffs' counsel is not entitled to restrict access to the witnesses," adding that "no party has an exclusive right to any witness." Order (Jan. 17, 2008), MDL DE 1094, at 2.

Defendant explains that the MDL court set "reasonable" guidelines for NPC's *ex parte* contacts with the plaintiff's treating physicians, including the following: Defendant must inform all physicians that (1) participation in *ex parte* interviews is voluntary and (2) the physician may request counsel to be present. MDL Order at 3.  As to plaintiffs in New Jersey, the MDL court

---

[1] Additional motions requesting *ex parte* contacts with Plaintiffs' treating physicians were filed by defendants Teva Parental Medicines, Inc., APP Pharmaceuticals, Inc., Hospira, Inc., and Bedford Laboratories applicable to the following In re Zometa/Aredia cases: Dobson, L-1761-09-MT; Slockish, L-1763-09-MT; Carfagno, L-705-09-MT; and Moss, L-4858-09-MT.   Hereinafter, this memorandum will refer to the filing defendants as "Defendant."

[2] Defendant notes that the Georgia state appellate case relied on in the MDL order has since been overturned by the Georgia Supreme Court, which subsequently held that, before defense counsel can engage in ex parte discussions with a plaintiff's physician, the plaintiff must first consent.

[3] Defendant notes that the MDL Magistrate Judge did not allow *ex parte* contacts with physicians located in the following twelve (12) states: Arizona, Arkansas, Illinois, Indiana, Iowa, Minnesota, Mississippi, North Carolina, Pennsylvania, Rhode Island, Tennessee, and Washington. It appears that Defendant is stipulating that such contacts would not be permissible in this case and, therefore, is not moving for the court to permit such contacts in those states.

2

Case ID: 990500001
Control No.: 12020571

additionally imposed the restrictions outlined in <u>Stempler v. Speidell</u>, 100 <u>N.J.</u> 368 (1985). Defendant notes that the MDL court did not require Defendant to provide plaintiffs' counsel with written questions it intended to ask nor did the MDL court require Defendant to record the interviews.[4]

Arguing that *ex parte* contacts are permitted in the majority of jurisdictions in which the Plaintiffs in this case reside, Defendant asserts that, under <u>Stempler</u>, New Jersey law expressly allows *ex parte* contacts with plaintiffs' treating physicians as a means of efficiently engaging in discovery and trial preparation. <u>Stempler</u>, <u>supra</u>, 100 <u>N.J.</u> at 382; <u>see also</u>, <u>In re Diet Drug Litig.</u>, 384 <u>N.J. Super.</u> 546, 551-52, 554-56 (Law Div. 2005); <u>Smith v. Am. Home Prods. Corp.</u>, 372 <u>N.J. Super.</u> 105, 112 (Law Div. 2003). Defendant further explains that, by engaging in *ex parte* communications with Plaintiffs' treating physicians, Defendant will be able to distinguish the medical treaters whose testimony is essential to the Plaintiffs' claims from those who provided mere ancillary care. According to Defendant, this will allow it to narrow the number of physicians to depose and concentrate resources on physicians whose depositions will provide better fact gathering for trial.

The purpose of <u>Stempler</u> conditions, as recognized by Defendants, is to strike a balance between the physician-patient privilege and a party's right to conduct informal discovery. Defendant maintains that, because both parties in a litigation are generally permitted to engage in private communications with fact witnesses, the only reason to deny a defendant's *ex parte*

---

[4] Defendant also notes that Plaintiffs' Steering Counsel Committee ("PSC") in the MDL, which included the same counsel representing plaintiffs in this case, "conceded that" *ex parte* contacts are allowed in New Jersey, subject only to <u>Stempler</u> conditions and no further conditions.

Furthermore, Defendant states that PSC also "agreed" that *ex parte* contacts are permitted in the following eleven (11) states in which fifty-three (53) of the plaintiffs in this case reside: Alabama, Kansas, Kentucky, Maryland, Missouri, New Jersey, New York, North Dakota, Oklahoma, South Carolina, and Wisconsin.

And, although Plaintiffs objected, the MDL court permitted *ex parte* contacts in the following three (3) states in which twenty-three (23) plaintiffs in this litigation reside: California, Massachusetts, and Ohio.

Case ID: 990500001
Control No.: 12020571

contacts with a plaintiff's treating physician is the physician-patient privilege. This privilege is, however, waived by a plaintiff upon initiating a personal injury suit and, thereby, placing his or her medical condition at issue. See N.J.S.A. § 2A:84A-22.4; see also In re Diet Drug Litig., 384 N.J. Super. at 560-61. Yet, despite the N.J.S.A. § 2A:84A-22.4 waiver, Stempler protects the patient's privilege by imposing several conditions on defense counsel's *ex parte* contacts with the physician. Under Stempler, defense counsel must:

> (1)   provide treating physicians "with a description of the anticipated scope of the interview;"
> (2)   "communicate with unmistakable clarity the fact that the physician[s'] participation in an ex parte interview is voluntary;" and
> (3)   provide "plaintiffs' counsel with reasonable notice of the time and place of the proposed interviews."

[Stempler, supra, 100 N.J. at 382.]

The Stempler Court added that "plaintiff[s'] counsel should provide written authorization[s] to facilitate the conduct of interviews," but that "[i]f such authorizations are withheld unreasonably," the court may compel their production. Ibid.

Defendant further argues that the restrictions outlined in Stempler are inapplicable to non-privileged contacts with plaintiffs' physicians. Defendant contends that Stempler exists only to protect the physician-patient privilege and, therefore, is not triggered where the communication does not concern any privilege. Thus, according to Defendant, there is no need to advise Plaintiffs' counsel of any such communication and Plaintiffs' counsel has no right to object to such communication.

Defendant provides the following examples of matters outside the scope of Stempler and its protections: (1) contacting a plaintiff's physician merely to schedule a deposition; and (2) inquiring as to "matters other than the care and treatment of [P]laintiffs, such as [the physician's] experience with company sales representatives and [the physician's] views on general

Case ID: 990500001
Control No.: 12020571

causation." According to Defendant, it will "clearly and explicitly tell each physician – immediately upon first contact and subsequently – that it does not want information about any aspect of the care or treatment of a particular plaintiff and that the physician may not disclose such information," and that, if the matter of the discussion begins to concern the care and treatment of Plaintiffs, Defendant will comply with the <u>Stempler</u> requirements. (Def. Br. at 8-9).

### Plaintiffs' Opposition

In opposition, Plaintiffs contend that Defendant's motion is "largely moot" because core discovery has now been completed; fact discovery is about to close; the bellwether case roster has been reduced to four cases; and discovery in those four bellwether cases is proceeding. Plaintiffs argue that, therefore, *ex parte* communications are not warranted here. Plaintiffs then allege that Defendant "overstates" the MDL court's ruling, clarifying that: (1) the MDL court only permitted *ex parte* contacts in those states that either do not have a physician-patient privilege and/or do not have clear decisions or statutes which prohibit *ex parte* communications; (2) the court imposed certain restrictions on "any" communications; and (3) New Jersey has certain additional restrictions imposed under <u>Stempler</u>.[5] Plaintiffs also contend that *ex parte* contacts should not be permitted because a physician-patient privilege exists in New Jersey.

If *ex parte* contacts are permitted by this court, Plaintiffs assert that such contacts should be governed by Judge Garruto's July 10, 2006 Order, issued in <u>In re HRT Litig.</u>, Mass Tort No. 266 (N.J. Super. Law Div. July 10, 2006). Plaintiffs list the following provisions from Judge Garruto's Order that Plaintiffs believe should be adopted by this court and reflected in any order allowing *ex parte* contacts:

---

[5] In addition to the provisions required by <u>Stempler</u>, some New Jersey trial courts have imposed further restrictions on *ex parte* contacts, see, e.g., <u>In re HRT Litig.</u>, Mass Tort No. 266, at 2 (N.J. Super. Law Div., July 10, 2006) (slip op.).

Case ID: 990500001
Control No.: 12020571

(1)  Defendant must provide Plaintiffs' counsel with 21 days notice of any interviews;

(2)  Defendant must provide Plaintiffs with a list of proposed question;

(3)  Defendant must produce all records and materials pertaining to Defendant's contacts with, and materials provided to, the physician, identified in Plaintiffs' authorizations; and

(4)  the Order permitting *ex parte* contacts will not apply to any states which do not compel plaintiffs to consent to such interviews.

Plaintiffs argue that these provisions, and the others set forth in Judge Garruto's Order, strike an appropriate balance between Plaintiffs' privacy expectations concerning their health care treatment and Defendant's access to witnesses.

Plaintiffs also take issue with Defendant's assertion that Stempler applies only to protected and privileged matters – an interpretation that, in Plaintiffs' view, renders Stempler ineffectual. According to Plaintiffs, by permitting Defendant to contact Plaintiffs' physicians without adhering to the restrictions outlined in Stempler, Defendant would have "unbridled free reign to contact all of the treating physicians without any method of holding [Defendant] accountable for its conversations with these treaters." (Pl. Opp. at 8).

Lastly, Plaintiffs criticize Defendant's reference to the MDL, arguing: (1) the federal court is subject to different precedent than this court; (2) there were more than four active cases for scheduling of depositions in the MDL; (3) "once the orders were issued, failure to make a motion should not be construed as a waiver here;" (4) the MDL exercised discretion; and, (5) because Erie does not apply in New Jersey, this court should apply and administer one set of expectations on the parties for the sake of efficiency and clarity. (Pl. Opp. at 8). For these reasons, Plaintiffs urge that this court deny Defendant's motion.

Case ID: 990500001
Control No.: 12020571

**<u>Defendant's Reply</u>**

Defendant argues that its motion applies to the entire inventory of 151 pending cases in this mass tort, not just the initial bellwether cases and, therefore, is not moot.  Even as to the four cases where formal discovery is almost complete, Defendant contends that informal discovery is useful for trial preparation in the four bellwether cases.

Defendant then notes that the MDL did not "severely limit[] Novartis' ability to engage in *ex parte* communications," but instead imposed the restrictions described in <u>Stempler</u> for New Jersey residents and for plaintiffs whose treating physicians were located in other jurisdictions in which *ex parte* contacts are available and required Defendant only to inform all physicians that (1) participation in *ex parte* interviews is voluntary and (2) they may request plaintiffs' counsel to participate.  Defendant does not oppose this court's entry of such "reasonable guidelines" here.

Finally, Defendant asserts that there is no reason to restrict *ex parte* contacts beyond the conditions in <u>Stempler</u>, as such additional conditions "would increase the cost and defeat the purpose of conducting an informal interview." (Def. Reply at 6-7).  Defendant further notes that Plaintiffs' counsel in the MDL did not take the position that additional restrictions be imposed by the MDL, nor did Plaintiffs suggest that the laws of other jurisdictions in which *ex parte* contacts are permitted require the imposition of additional safeguards.  Accordingly, Defendant concludes that this court should permit *ex parte* interviews without additional constraints beyond <u>Stempler</u>.

7

Case ID: 990500001
Control No.: 12020571

### Plaintiffs' Supplemental Opposition

At the Case Management Conference held on September 23, 2009. Plaintiffs requested permission to file a supplemental brief. In their supplemental brief, Plaintiffs contend that this court should ban *ex parte* interviews of Plaintiffs' treating physicians by defense counsel. In the alternative, Plaintiffs argue that, if *ex parte* interviews are permitted, this court should closely monitor and impose strict conditions on such contacts to prevent any inadvertent disclosure of patients' medical information.

Plaintiffs suggest that complications have arisen from the standard medical authorizations that have been used to implement Stempler conditions. In addition, Plaintiffs note that the Stempler Court indicated that *ex parte* interviews may not be appropriate in "extreme cases," and that mass torts have been classified as such.[6]

Plaintiffs then identify a number of opinions that have either refused to allow *ex parte* interviews or have imposed additional safeguards beyond those declared in Stempler. See Smith, supra, 372 N.J. Super. at 136 (Judge Corodemus refused to permit *ex parte* interviews and ordered the defendants to proceed with formal depositions). Additionally, Plaintiffs rely on a series of rulings and opinions arising out of the Diet Drug mass tort, in which the judges handling the matter determined that Stempler interviews would not be allowed, noting the difficulties that would arise from trying to control and administer interviews for such a large volume of cases. See Bonnanno v. American Home Products (no citation provided by Plaintiffs' counsel). Judge Walsh, while permitting the defendant to conduct informal discovery, imposed

---

[6] Neither the New Jersey Supreme Court nor any other New Jersey court has ruled that *all* mass tort cases are necessarily "extreme cases." Judge Corodemus first applied the term "extreme" to a Law Division mass tort case in Smith, supra, 372 N.J. Super. 105, holding that Smith, in particular, was an "extreme" case under Stempler. In categorizing Smith as such, Judge Corodemus considered a number of specific factors beyond the case's mere designation as a mass tort. Further, although Judge Walsh broadly referred to mass tort cases as "extreme" in In re Diet Drug Litig., supra, he did not define the term "extreme." 384 N.J. Super. at 566.

Case ID: 990500001
Control No.: 12020571

various safeguards beyond those required by Stempler.  See In re Diet Drug Litig., supra, 384 N.J. Super. at 564 (recording and transcribing of all the defendants' *ex parte* interviews with plaintiffs' physicians and providing a copy of the transcript to plaintiffs' counsel at the time of the deposition).

Judge Wilson, who succeeded Judge Walsh in managing the Diet Drug litigation, subsequently denied defendants' motion seeking *ex parte* interviews, focusing on the uniqueness of mass tort cases.  According to Judge Wilson:

> [i]n mass tort dockets, the alleged efficiency of allowing Stempler interviews does not outweigh the impracticality of doing so.  The court does not have unlimited judicial resources nor unlimited time.  To permit these interviews opens a "Pandora's Box."  Litigation over the litany of potential problems (i.e., length of notification of plaintiffs' doctors, valid consent disputes, valid authorization submission on HIPAA, etc.) will severely limit the court's ability to move these cases to trial.  The court finds it important to note that such disputes occurred over just the handful of Stempler interviews which Judge Walsh did allow.
>
> [In re Diet Drug Litig., No. L-6016-04, p. 5 (N.J. Super. Law Div. Jan 13, 2006).]

Judge Wilson expressly rejected the idea that Stempler interviews would lead to simpler, cheaper, and more efficient discovery in the context of mass tort litigation.  Judge Wilson wrote:

> [a]llowing Stempler interviews to be conducted in the current litigation will only open the "floodgates of litigation" in terms of an abundance of motion practice.  This motion practice will arise out of the difficulty of overseeing the *ex parte* interviews on the part of the court.
>
> [Id. at p. 4.]

Plaintiffs then cite Judge Higbee's November 17, 2004 opinion in In re Vioxx, Case Code 619 (N.J. Super. Law Div.).  Judge Higbee also barred defendants from conducting *ex parte* interviews with plaintiffs' physicians based on the concern that such informal discovery methods would not result in cheaper, more efficient discovery in the context of that mass tort.  Judge Higbee, in her opinion, explained that, to the contrary, (i) some of the doctors would insist on

9

having their own lawyers at the interviews, (ii) the doctors might have to be advised of possible liability for HIPAA violations and of the right to have their own counsel present, and (iii) most of the doctors likely would be deposed even if there were Stempler interviews.  In re Vioxx, supra, Case Code 619, p. 8.

Lastly, Plaintiffs refer this court to the HRT litigation in Middlesex County.  Judge Garruto's July 10, 2006 Order in the HRT litigation was discussed at length in Plaintiffs' initial Opposition brief.  (See Pl. Opp. at 5).

Relying on Stempler and other cited judicial decisions, Plaintiffs request that this court prohibit ex parte contacts due to manageability issues and the absence of any benefit from such informal discovery methods.  Plaintiffs explain that the large number of plaintiffs involved in this litigation will create manageability difficulties for this court with regard to the medical authorizations that must be specifically tailored for each plaintiff and compliant with HIPAA's privacy requirements.  In light of the fact that there are at least three physician interviews per case and about 150 pending cases in this litigation, Plaintiffs argue that it will be impossible to monitor the informal interviews to ensure that there are no inadvertent disclosures of Plaintiffs' confidential medical information.

Based on the MDL, Plaintiffs believe that Defendant will conduct the same number of formal depositions regardless of whether Defendant is permitted to conduct informal discovery.  Thus, Plaintiffs opine that the primary purpose of Stempler – to eliminate the need for formal depositions of witnesses – will not be advanced in this case.  Therefore, Plaintiffs urge this court to prohibit Defendants from conducting ex parte interviews with Plaintiffs' treating physicians.

Case ID: 990500001
Control No.: 12020571

If this court does permit *ex parte* contacts, Plaintiffs, in the alternative, urge this court to impose conditions beyond those identified in Stempler, and even beyond those identified in the HRT litigation.  Specifically, Plaintiffs request that this court impose the following conditions:

1. Novartis must provide 21 days advance notice to plaintiff's counsel of any interview;
2. Novartis must provide to the physician and plaintiff's counsel a written list of the questions it intends to ask, also 21 days before the scheduled interview;[7]
3. Follow-up on the listed questions should not be permitted;
4. The interviews must be recorded, with the recordings to be transcribed and provided to plaintiff's counsel within 30 days of the interview or, if the physician is deposed, at least 5 days prior to the deposition, whichever is earlier;
5. The Order shall apply only to New Jersey plaintiffs.

Plaintiffs assert that, if permitted, *ex parte* interviews should not lead to *ex parte* follow-up conversations.  Plaintiffs explain that Stempler does not explicitly permit post-interview communications between defense counsel and plaintiffs' physicians and state that such unfettered access would cause further problems.  Therefore, Plaintiffs maintain, any communications between defense counsel and plaintiffs' treating physicians must be limited to pre-deposition contact.

### Defendant's Supplemental Reply

Defendants address Plaintiffs' reliance on several unpublished New Jersey cases that deny *ex parte* contacts in mass tort matters.  Defendant contends that this mass tort matter is distinguishable from all of the mass tort cases cited by Plaintiffs.  First, Defendant quotes language from the Smith case stating that its holding "does not imply that Stempler is not available as an informal discovery tool for mass tort cases." Smith, supra, 372 N.J. Super. at 136.

---

[7] Plaintiffs also assert that the "basic Stempler disclosure requirements" would require the form of authorization state that: "(a) the physician's participation is entirely voluntary; (b) the plaintiff-patient has not requested the physician to participate in the interview; (c) the court has not requested the physician to participate in the interview."

Case ID: 990500001
Control No.: 12020571

Defendant argues that the "limited holding" of <u>Smith</u> is not applicable to the case at bar because, like <u>In re Diet Drug Litig.</u>, <u>supra</u>, 384 <u>N.J. Super.</u> at 564-66, there are no docket management issues present here.

Defendant further asserts that this mass tort is not an "extreme" case and is distinguishable from <u>Smith</u> because Defendant "has made its request for *ex parte* interviews early in discovery and permitting such interviews will not impact the schedule in this litigation." (Def. Supplemental Reply at 3). Defendant adds that formal fact discovery has closed in only four cases, which are scheduled for trial in March 2010, and almost 150 cases remain in which no depositions have occurred.

Defendant then addresses the unpublished opinions relied on by Plaintiffs, noting that this court is not bound by these opinions. Further, Defendant believes that the docket management issues and other concerns raised by the courts in those cases are not present here. As to <u>In re Diet Drug Litig.</u>, <u>supra</u>, No. L-6016-04, Defendant responds by noting that the MDL allowed *ex parte* interviews in the hundreds of cases in that litigation and that "there have been no discovery disputes on that issue in the federal litigation." (Def. Supplemental Reply at 4).

In response to Plaintiffs' reliance on <u>In re Vioxx</u>, <u>supra</u>, Case Code 619, Defendant asserts that, whereas in <u>In re Vioxx</u>, defense counsel for Merck conceded that formal depositions would "almost always be required even if there were <u>Stempler</u> interviews," (Def. Supplemental Reply at 5), NPC maintains that it has used *ex parte* contacts in the MDL to eliminate unnecessary depositions. While Defendant admits that it will likely depose each plaintiff's prescribing oncologist, primary dentist, and primary oral surgeon, it claims that there are additional peripheral treaters whose depositions can be avoided through *ex parte* communications. Defendant further asserts that, "[a]bsent *ex parte* interviews, [it] has no choice

12

Case ID: 990500001
Control No.: 12020571

but to take these physicians' depositions despite their peripheral role in the case to determine the basis for their causation opinions. . . ." (Def. Supplemental Reply at 6).

Defendant further distinguishes this litigation from In re Vioxx by explaining that, in Vioxx, that court was concerned with potential disputes over the "proper scope for each interview." According to Defendant, in this litigation, the use of Plaintiff-authorized broad medical and mental health releases place the full medical history of each plaintiff within the scope of said interviews. In other words, Defendant explains, Plaintiffs have failed to indicate what confidential medical information would be within the ambit of disputable information.

Last, for the sake of fundamental fairness and due process, Defendant asks that Plaintiffs not be permitted more liberal access to Plaintiffs' treating physicians than Defendant is permitted. Fundamental fairness includes leveling the playing field with respect to access to important fact witnesses, as well as the notion that no party has a proprietary right to any witness or any evidence that that witness may have. Accordingly, Defendant requests that, if the court prohibits Defendant from having *ex parte* contacts with Plaintiffs' treating physicians, Plaintiffs' counsel should be denied such informal access as well.

### Conclusion

After consideration of the parties' written submissions and counsel having agreed to submit the matter to this court "on the papers," this court denies Defendant's Motion for an Order Permitting *Ex Parte* Contacts with Plaintiffs' Treating Physicians. Both parties shall be required to proceed directly to deposition of Plaintiffs' treating physicians.

Under Stempler, New Jersey law expressly allows *ex parte* contacts with plaintiffs' treating physicians as a means of efficiently engaging in discovery and trial preparation. Stempler, supra, 100 N.J. at 382; see also, Smith, supra, 372 N.J. Super. 105, 112; In re Diet

13

Case ID: 990500001
Control No.: 12020571

Drug Litig., supra, 384 N.J. Super. 546, 551-52, 554-56. To protect the physician-patient privilege while still promoting a party's right to conduct informal discovery, the Stempler court imposed a number of "procedural safeguards" that limit defense counsel's *ex parte* contacts with the physician. Under Stempler, New Jersey courts may, and have, imposed further conditions for *ex parte* interviews. Id. at 383 ("permit[ting] trial courts and counsel to fashion appropriate procedures in unusual cases without interfering unnecessarily with the use of personal interviews in routine cases"). See, e.g., In re Diet Drug Litig., supra, 384 N.J. Super. at 564-66 (employing additional procedural safeguards to insure HIPAA compliance); In re HRT Litig., supra, Mass Tort No. 266, at 2.

While *ex parte* contacts are permitted under Stempler, the Supreme Court clearly noted that *ex parte* contacts are not mandatory in all cases. See Stempler, supra, 100 N.J. at 383. Stempler gave trial courts the discretion to prohibit the use of *ex parte* contacts, explaining that, in certain instances, the court may require depositions in accordance with formal discovery rules. Ibid. (trial court supervision "can take the form of an order . . . requiring defendant's counsel to proceed by deposition," and allowing "trial courts and counsel to fashion appropriate procedures in unusual cases"); see also, Smith, supra, 372 N.J. Super 105, 132 (noting the Stempler Court's reference to "extreme cases" in vesting discretion with the trial court).

Although Stempler did not articulate the kinds of cases warranting adherence to formal discovery rules, this issue was addressed by Judge Corodemus in Smith, a mass tort litigation involving 300 individual cases. Smith, supra, 372 N.J. Super. at 133.[8] Judge Corodemus held that Smith presented the kind of "extreme case" mentioned in Stempler that necessarily required more formal discovery. Smith, supra, 372 N.J. Super. at 133-34.

---

[8] While this court is not bound by the published decision of another trial court/mass tort judge, this court recognizes Judge Corodemus' service as the mass tort judge in Middlesex County for many years and values her insight and experience on mass tort litigation matters.

Case ID: 990500001
Control No.: 12020571

Mindful of Stempler's explicit authorization for plaintiffs to "seek and obtain a protective order if under the circumstances a proposed *ex parte* interview with a specific physician threatens to cause . . . substantial prejudice to plaintiff," Stempler, supra, 100 N.J. at 383, Judge Corodemus explained that "it would be improvident to cease discovery to hold extensive hearings as to what constitutes 'pertinent' medical information and/or to cite all 'more stringent' statutory privacy constraints that may apply to *ex parte* interviews" in each of the 300 pending cases. Smith, supra, 372 N.J. Super. at 133. Judge Corodemus concluded that "for nearly 300 mass tort cases with a prospective four to ten medical personnel for each. . . ," and bearing in mind the increased privacy implications of HIPAA, the risk of wrongful disclosure of information was likely in a mass tort litigation. Smith, supra, 372 N.J. Super. at 134; cf. In re Diet Drug Litig., supra, 384 N.J. Super. at 566 (agreeing with Judge Corodemus that mass tort cases are "'extreme' cases, requiring special management"). Accordingly, Judge Corodemus held that the "inherent[] complex[ity]" of mass tort cases and "the magnitude of the potential intricacies of entirely redoing the discovery process to include informal discovery with HIPAA-complaint authorizations . . . [render] the most practical recourse . . . to deny the use of Stempler interviews." Smith, supra, 372 N.J. Super. at 136.

Other New Jersey mass tort judges facing the same practical concerns as Judge Corodemus in Smith have come to the same conclusion regarding *ex parte* contacts with plaintiffs' treating physicians. In the Vioxx litigation, Judge Higbee also barred defendants from conducting *ex parte* interviews with plaintiffs' physicians. Judge Higbee explained that the informal discovery method would amount to a "practical nightmare" because, "given the large number of cases [193 plaintiffs] involved in this mass tort and the even larger number of doctors involved, the court would be unduly burdened by hearings to determine the permissible scope of

15

Case ID: 990500001
Control No.: 12020571

each interview." Judge Higbee further explained that, in a mass tort litigation the size of <u>Vioxx</u>, the purpose of *ex parte* interviews – "to allow a simpler, cheaper, more efficient and informal means of discovery than depositions" – would not be achieved.  <u>Ibid.</u> (noting that *ex parte* interviews sometimes involve physicians' own attorneys, highlighting the lack of efficiency and informality of such interviews).

Likewise, in <u>In re Diet Drug Litig.</u>, <u>supra</u>, No. L-6016-04, Judge Wilson denied defendant's motion to conduct *ex parte* interviews in a mass tort litigation for reasons similar to that of Judges Corodemus and Higbee.  Judge Wilson explained that allowing *ex parte* contacts in that litigation would be contrary to the design of <u>Stempler</u> because it would open the "'floodgates of litigation' in terms of an abundance of motion practice" that would "arise out of the difficulty of overseeing the *ex parte* interviews on the part of the court." <u>Id.</u> at 6.  Judge Wilson further explained that, "[i]n mass tort dockets, the alleged efficiency of allowing <u>Stempler</u> interviews does not outweigh the impracticability of doing so," referencing the potential disputes likely to occur – "length of notification of plaintiffs' doctors, valid consent disputes, valid authorization submissions on HIPAA. . . ." <u>Id.</u> at 7.

Similarly, a number of federal MDL cases have faced practical difficulties with *ex parte* contacts and have recognized the incongruous affect that this informal discovery method can have on pretrial efficiency.  For example, in <u>In re Vioxx Products Liability Litigation</u>, 230 <u>F.R.D.</u> 473 (E.D. La. 2005), an Eastern District of Louisiana MDL, Judge Fallon prohibited defense counsel from initiating *ex parte* contacts with plaintiffs' physicians after initially ruling in <u>In re Vioxx Products Liability Litigation</u>, 230 <u>F.R.D.</u> 470 (E.D. La. 2005), that both parties were permitted to engage in *ex parte* contacts. Judge Fallon explained that the "practical effect [of his initial ruling] created unintended consequences that can cause more problems than it

Case ID: 990500001
Control No.: 12020571

sought to solve." In re Vioxx, 230 F.R.D. at 475; see also, e.g., In re Kugel Mesh Hernia Repair Patch Litig., 2008 U.S. Dist. LEXIS 63475 (D.R.I. Jan. 22, 2004) (as a "practical solution of the issue," denying request for *ex parte* contacts); In re Baycol Products Litigation, 219 F.R.D. 468 (D. Minn. 2003) (denying request for *ex parte* treating physician communications in Baycol cholesterol drug MDL); Benally v. United States, 216 F.R.D. 478 (D. Ariz. 2003) (denying request for *ex parte* treating physician communications in FTCA medical malpractice case).

While this court is not legally bound by the mass tort opinions of the state court judges (both published and unpublished) or the federal MDL cases cited above, this court stands to benefit from the guidance of similarly-situated judges faced with the same practical concerns currently at issue in this litigation. Although there is a general presumption in New Jersey that defendants should be permitted to initiate *ex parte* contacts with plaintiffs' treating physicians, the unique set of practical concerns presented in mass tort cases should not be underappreciated.

Although New Jersey allows *ex parte* contacts with plaintiffs' treating physicians, such informal discovery is not required under Stempler. Stempler, supra, 100 N.J. at 383. The Zometa/Aredia matters are a complex mass tort involving over 150 plaintiffs at the present time (and the number of filed cases continues to grow), each with several treating physicians, such that the Zometa/Aredia matters clearly fall under category of "unusual" or "extreme" cases, as mentioned in Stempler and Smith. Thus, this court has the discretion to condition or prohibit the use of *ex parte* contacts. Ibid.

This court lacks sufficient judicial resources and time to process the inevitable motions for protective orders that are likely to be filed in this action. Plaintiffs, in filing motions for protective orders, are entitled to a delay in the discovery process until this court can schedule hearings concerning, e.g., what constitutes "pertinent" medical information. Such a procedure

Case ID: 990500001
Control No.: 12020571

fails to promote a simpler, cheaper, more efficient, and informal means of discovery and, hence, would be contrary to the primary purpose of allowing *ex parte* contacts.

Further, this court is aware that both parties should have the same right of access to all non-party witnesses, including Plaintiffs' own treating physicians, see Stempler, supra, 100 N.J. at 380 (quoting Lazorick v. Brown, 195 N.J. Super. 444, 456 (App. Div. 1984)), and that no party has a proprietary right to any witness's evidence, see Stempler, supra, 100 N.J. at 381 (quoting Doe v. Eli Lilly & Co., 99 F.R.D. 126, 128 (D.D.C. 1983)). Accordingly, in the interest of fairness to all, no party – Plaintiffs nor Defendants – shall engage in *ex parte* contacts with Plaintiffs' treating physicians or influence the deposition or trial testimony of Plaintiffs' treating physicians. To hold otherwise would facilitate the potential for either counsel to influence Plaintiffs' treating physicians. To ensure that all parties have the same right of access to all non-party fact witnesses, this court shall prohibit the parties from engaging in *ex parte* contacts with Plaintiffs' treating physicians.

While this court was only recently assigned to handle mass tort litigation matters, the court recognizes and appreciates the coordinated efforts shown by counsel in the handling of these large and complex matters. The herculean task of managing these cases toward trial falls not just upon counsel for the parties, but the court and its staff as well. It is the opinion of this court that the limited resources of all involved are best spent in preparing cases for trial and not debating the true value of informal discovery or the filing of motions to compel and/or protect parties regarding informal discovery.

Accordingly, this court denies Defendant's Motion for an Order permitting *Ex Parte* Contacts with Plaintiffs' Treating Physicians. All parties shall proceed by way of formal

Case ID: 990500001
Control No.: 12020571

deposition of Plaintiffs' treating physicians.  A "filed" copy of the Order memorializing this court's decision is attached.

Jessica R. Mayer, J.S.C.

Case ID: 990500001
Control No.: 12020571