# EXHIBIT 8

CONFORMED COPY
ORIGINAL FILED
Superior Court of California
County of Los Angeles

MAR 2 0 2015

Sherri R. Carter, Executive Officer/Clerk
By: Roxanne Arriaga, Deputy

# SUPERIOR COURT OF CALIFORNIA

# COUNTY OF LOS ANGELES

| | |
|---|---|
| COORDINATION PROCEEDING SPECIAL TITLE (Rule 2.550) | LASC Case No: BC411687 |
| | COURT'S RULING AND ORDER RE: DEFENDANTS' MOTION TO REGULATE *EX PARTE* CONTACT |
| ACTOS PRODUCT LIABILITY CASES | |
| | Hearing Date: February 10, 2015 |
| THIS DOCUMENT RELATES TO: | |
| *Reuven Bar Yotam, et al. v. Takeda Pharmaceuticals North America, Inc., et al.*, San Francisco Superior Court, Case No. CGC-12-519107 | |

## I.

## BACKGROUND

In this coordinated litigation, Plaintiffs have sued the Defendants, manufacturers of the prescription drug Actos (the trade name for pioglitazone HC1 tablets), which is used to treat type 2 diabetes mellitus. Plaintiffs allege that they developed bladder cancer from ingesting the drug.

1  The Plaintiffs in these cases allege various theories for products liability (including claims for
2  negligence, strict liability – failure to warn, strict liability – defective design, breach of the
3  implied warranty for a particular purpose, breach of the implied warranty of merchantability,
4  violation of the Unfair Competition Law ("UCL") and False Advertising Law ("FAL"), deceit
5  by concealment, negligent misrepresentation, and violation of the Consumer Legal Remedies
6  Act ("CLRA")).
7        The Takeda Defendants and Defendant Eli Lilly (collectively, "Defendants") have
8  brought the instant motion to regulate the Plaintiffs' counsel's *ex parte* contact with the treating
9  physicians. Specifically, the Defendants seek an order: 1) limiting Plaintiffs' counsel's *ex parte*
10 contacts with treating physicians in JCCP 4696 to a discussion of the physicians' records, course
11 of treatment and related issues such as diagnosis and prognosis; and 2) barring Plaintiffs'
12 counsel from discussing liability issues or theories, product warnings, Defendants' research
13 documents, medical literature, or related materials with, or showing or providing any such
14 documents to, treating physicians before the physicians depositions.
15       Alternatively, Defendants request an order: 1) authorizing Defendants' counsel to meet
16 *ex parte* with treating physicians to discuss liability issues and theories, product warnings,
17 Defendants' research documents, medical literature, and related materials (but not to discuss the
18 physicians' care and treatment of Plaintiffs); and 2) requiring the parties to disclose
19 contemporaneously any documents or other information – none of which should be allowed to
20 contain any highlighting or other annotations – shown or provided to the physicians.
21       Both sides have filed motions to seal. Defendants seek an order sealing documents
22 attached to Defendants' papers in support of the motion to seal. Plaintiffs have moved to seal
23 portions of Litzenburg Declaration in Connection with Plaintiffs' opposition to the Defendants'
24 motion limiting *ex parte* contact.
25

Plaintiffs also sought an order striking the Defendants' reply in support of Defendants' motion to seal and the supporting Declaration of Mollie Benedict. At the Court's February 10, 2015 hearing, the Court granted the Plaintiffs the chance to file supplemental briefing on the issues raised in the Plaintiffs' motion to strike the Defendants' reply. Plaintiffs also seek an order sealing exhibits 1 and 6 to their supplemental briefing.

For the reasons discussed *infra*, the motion to limit Plaintiffs' counsel's ex parte contact with treating physicians is granted. The Court issues the instant order: 1) limiting Plaintiffs' counsel's *ex parte* contacts with treating physicians in JCCP 4696 to a discussion of the physicians' records, course of treatment and related issues such as diagnosis and prognosis; and 2) barring Plaintiffs' counsel from discussing liability issues or theories, product warnings, Defendants' research documents, medical literature, or related materials with, or showing or providing any such documents to, treating physicians before the physicians' depositions. Further, having considered all supplemental papers filed subsequent to the hearing dealing with Defendants' motion to seal[1], the Court grants in full the Defendants' motion to seal and the Plaintiffs' motions to seal. The Plaintiffs' motion to strike Defendants' reply brief in support of Defendants' motion to seal and the supporting Benedict Declaration is denied.

## II.

## MOTIONS TO SEAL

### 1. Defendants' Motion to Seal

Defendants seek an order sealing the following exhibits:

---

[1] In their Response to Plaintiffs' Supplemental Brief, Defendants request the Court strike or at least disregard all of the Plaintiffs' Supplemental Brief apart from that portion of Section II that Defendants claim relates to the purportedly new material with which Plaintiffs took issue in their motion to strike. That request is denied, as the Court has considered all arguments advanced by Plaintiffs in the Supplemental Brief.

## IV.

## MOTION TO REGULATE EX PARTE CONTACT WITH PHYSICIANS

By virtue of the instant motion, Defendants Takeda and Eli Lilly seek an order from the Court regulating Plaintiffs' counsel's *ex parte* contact with Plaintiffs' treating physicians. In particular, the proposed parameters of such an order would be:

> 1) limiting Plaintiffs' counsel's *ex parte* contacts with treating physicians in JCCP 4696 to a discussion of the physicians' records, course of treatment and related issues such as diagnosis and prognosis; and
>
> 2) barring Plaintiffs' counsel from discussing liability issues or theories, product warnings, Defendants' research documents, medical literature, or related materials with, or showing or providing any such documents to, treating physicians before the physicians depositions.

As an alternative, Defendants seek an order:

> 1) authorizing Defendants' counsel to meet *ex parte* with treating physicians to discuss liability issues and theories, product warnings, Defendants' research documents, medical literature, and related materials (but not to discuss the physicians' care and treatment of Plaintiffs); and
>
> 2) requiring the parties to disclose contemporaneously any documents or other information – none of which should be allowed to contain any highlighting or other annotations – shown or provided to the physicians.

There is significant history leading up to the Defendants' filing of the instant motion, which will not be repeated here (it is discussed more thoroughly *supra* and is set forth in the papers). The major points, however, are these. Plaintiffs' counsel have been providing Plaintiffs' treating physicians (including Dr. David Chappell in the *Rohyans* case) with various documents (deemed "confidential") outside of the normal discovery process, and in anticipation of their depositions. Counsel has been making this contact with the treating physicians on an *ex parte* basis. The treating physicians have not been designated as experts, yet they are still provided with various documents weeks before their depositions occur. The treating physicians are able to review these documents, and, according to Defendants, the views of the treating physicians are "tainted" as a result.

**1. Regulation of *ex parte* contacts with counsel and the physician-patient privilege**

There are two broad issues for the Court's consideration on this motion. The first is the extent to which the Court may regulate, consistent with the physician-patient privilege, Plaintiffs' counsel's *ex parte* communications with treating physicians. Defendants claim that Plaintiffs' counsel is effectively transforming the treating physicians into undesignated experts (by providing the physicians with the designated-confidential documents prior to, and in anticipation of, deposition), and giving Plaintiffs an unfair advantage. With respect to expert witnesses, CCP §2034.260(c) provides in part:

> (c) If any witness on the list is an expert as described in subdivision (b) of Section 2034.210, the exchange shall also include or be accompanied by an expert witness declaration signed only by the attorney for the party designating the expert, or by that party if that party has no attorney.

In turn, CCP §2034.210(b) provides:

> (b) If any expert designated by a party under subdivision (a) is a party or an employee of a party, or has been *retained* by a party *for the purpose of forming and expressing an opinion in anticipation of the litigation or in preparation for the trial of the action*, the designation of that witness *shall include or be accompanied by an expert witness declaration* under Section 2034.260. (Emphasis added.)

In *Schreiber v. Estate of Kiser* (1999) 22 Cal.4th 31, the California Supreme Court discussed the role of the treating physician as a witness, and noted as follows:

> A treating physician is a percipient expert, but that does not mean that his testimony is limited only to personal observations. Rather, like any other expert, *he may provide both fact and opinion testimony*. As the legislative history clarifies, what distinguishes the treating physician from a retained expert is not the *content* of the testimony, but the *context* in which he *became familiar with the plaintiff's injuries* that were ultimately the subject of litigation, and which form the factual basis for the medical opinion. The contextual nature of the inquiry is implicit in the language of section 2034, subdivision (a)(2), which describes a retained expert as one "retained by a party *for the purpose* of forming and expressing an opinion in anticipation of the litigation or in preparation for the trial of the action." (Italics added.) A treating physician is not *consulted* for litigation purposes, but rather *learns* of the plaintiff's *injuries* and *medical history* because of the underlying physician-patient relationship. *Schreiber, supra,* 22 Cal.4th at 35-36.

12

While the treating physicians are percipient "experts" (and may in fact provide fact and opinion testimony), they are not *designated* experts. By providing the confidential literature to the treating physicians on an *ex parte* basis, Plaintiffs, in effect, would circumvent the specific requirements under the Code of Civil Procedure for expert witness designations.

The Court is not persuaded by Plaintiffs' argument that any limitation on counsel's ability to engage in *ex parte* communications "would severely undermine a Plaintiff's ability to prove a failure to warn claim." As Defendants point out in their reply brief, Plaintiffs' counsel may meet *ex parte* with treating physicians and ask them questions about the information obtained by an examination of their patients. Plaintiffs' counsel may then use the information learned from the *ex parte* contacts to tailor deposition questioning. As Defendants note, during deposition, Plaintiffs' counsel may show the treating physicians medical articles and documents (those which have been deemed confidential) and ask them whether they would have made prescribing decisions had they known certain facts at the relevant time.

Plaintiffs claim in the motion that to provide the confidential exhibits to the treating physicians at the time of deposition would exponentially lengthen the deposition, and it would be "impossible" to complete the testimony. However, the parties are ordered to cooperate on the length of the treating physician depositions. The Court will be willing to permit extended depositions, within reason and on a showing of good cause, where confidential documents are brought to the attention of the treating physicians at their depositions. This would prevent any unfair element of surprise, and at the same time, would permit Plaintiffs the full right to question the physicians at deposition about their treating decisions based in part on the confidential documents.

There is authority for the *ex parte* limiting order. In *In re Ortho Evra Prods. Liab. Litig.* (N.D. Ohio Jan. 20, 2010) 2010 WL 320064 at *2, the Court held "Plaintiffs' counsel may meet *ex parte* to discuss the physicians' records, course of treatment and related matters, but not as to

liability issues or theories, product warnings, Defendant research documents or related materials." *See also In re: Chantix (Verenicline) Prods. Liab. Litig.* (N.D. Ala. June 30, 2011) 2011 U.S. Dist. LEXIS 156968 at *18 (noting that plaintiffs' counsel's *ex parte* communications must be "limited to the individual care of the individual plaintiffs, such as the plaintiffs' treatment, medical records and conversations with their health care providers" and that "[p]laintiffs' counsel shall not discuss defendants' internal documents with plaintiffs' health care providers outside of a deposition"). The Court finds that it does have authority to regulate Plaintiffs' counsel's *ex parte* contacts.

### 2. CMO No. 3

The second major issue posed by the motion is the effect of CMO No. 3 on the *ex parte* contacts with Plaintiffs' treating physicians. According to Plaintiffs, CMO No. 3 specifically permits them to provide this confidential material to treating physicians, provided they abide by the terms of the CMO. Defendants, however, claim that CMO No. 3 does not allow Plaintiffs' counsel to send Defendants' confidential documents to treating physicians before their depositions. The applicable language from CMO 3 states:

> (c) A plaintiff's current or former healthcare provider who has agreed to maintain the confidentiality of any document subject to this order: or who has agreed on the record at deposition to maintain the confidentiality of any document intended to be used at the deposition *may be shown or questioned about Confidential Discovery Material at the deposition*, provided that no copies of the Confidential Discovery Material *shall be left in the possession of the healthcare provider witness* and copies of that Confidential Discovery Material shall not be attached to or included with any original or copy of the transcript of that deposition provided to the healthcare provider; however, copies of the Confidential Discovery Material shall be attached to the deposition transcript and made available for the use of the deponent in the event he or she testifies at trial.
>
> Counsel present at the deposition should make a good faith effort to obtain the healthcare provider's agreement on the record to maintaining confidentiality and no counsel shall make efforts to dissuade the healthcare provider from refusing to agree on the record to maintaining the confidentiality of any such documents. Regardless of whether any deponent signs the Declaration attached as Exhibit A, this Order will apply to any deponent who is shown or examined about Confidential Discovery Material and the deponent cannot take any exhibits with

them nor can he/she reveal any information learned from the confidential materials shown to them. This paragraph is not intended to prevent any party or deponent from seeking other relief from this Court. See CMO No. 3, ¶7(c) (emphasis added).

By its terms, there is nothing in this provision demonstrating an agreement to an *ex parte* disclosure of documents designated "confidential." The record is vague as to whether Defendants' counsel understood that CMO No. 3 was intended to permit such *ex parte* disclosure, but for their part, Defendants' counsel adamantly states there was no such agreement. The Court is not persuaded by Plaintiffs' assertions that the parties' past course of dealing in other Actos cases warrants a different result. The Miller Firm apparently sent materials to treating physicians in a number of Actos cases, but there is nothing to indicate that they were provided with documents deemed *confidential* under the CMO.

There does not appear to be any real dispute that, as a general principle, ex parte contact between Plaintiffs' counsel and the Plaintiff's treating physician is permissible. However, the means by which Plaintiffs are dealing with the treating physicians on an *ex parte* basis appears to stand in opposition CMO No. 3, and circumvent the requirements for designation of experts.

With all of that said, Defendants' alternative relief (to permit Defendants *ex parte* contact with the treating physicians) is not appropriate. To allow such alternative relief would potentially invade the physician-patient privilege. It is better, from a practical standpoint, to require Defendants' contacts with Plaintiffs' treating physicians occur within the scope of the discovery process.

For all of these reasons, the Court finds that CMO No. 3 does not allow Plaintiffs to, on an *ex parte* basis and outside the scope of a deposition, provide Plaintiffs' treating physicians with confidential documents.

V.

CONCLUSION

For the foregoing reasons, the motion to limit Plaintiffs' counsel's ex parte contact with treating physicians is granted. The Court orders as follows: 1) Plaintiffs' counsel's *ex parte* contacts with treating physicians in JCCP 4696 shall be limited to a discussion of the physicians' records, course of treatment and related issues such as diagnosis and prognosis; and 2) Plaintiffs' counsel may not discuss liability issues or theories, product warnings, Defendants' research documents, medical literature, or related materials with, or showing or providing any such documents to, treating physicians before the physicians depositions. The Defendants' motion to seal, and the Plaintiffs' motions to seal, are granted in full. The Plaintiffs' motion to strike Defendants' reply brief in support of Defendants' motion to seal and the supporting Benedict Declaration is denied.

The issues addressed in this Ruling and Order present controlling questions of law as to which there are substantial grounds for difference of opinion. Pursuant to Code of Civil Procedure §166.1, the Court finds that appellate resolution of these issues may materially assist in the resolution of the litigation.

Dated: March 20, 2015

**KENNETH R. FREEMAN**

Kenneth Freeman
Judge of the Superior Court