# EXHIBIT 10

"



54644340
Dec 03 2013
03:58PM


**NOT FOR PUBLICATION WITHOUT THE APPROVAL OF THE COMMITTEE ON OPINIONS**

# SUPERIOR COURT OF NEW JERSEY
## COUNTIES OF
## ATLANTIC AND CAPE MAY

**CAROL E. HIGBEE, P.J.Cv.**

1201 Bacharach Boulevard
Atlantic City, NJ 08401-4527
(609) 594-3396

### MEMORANDUM OF DECISION ON MOTION
Pursuant to Rule 1:6-2(f)

*CASE:*      In re Pelvic Mesh/Gynecare Litigation

*DOCKET #:*      ATL-L-6341-10

*DATE:*      December 3, 2013

*MOTIONS:*      Motion for Protective Order/Motion to Compel

*ATTORNEYS:*      Adam M. Slater, Esq. – Plaintiffs
Kelly S. Crawford, Esq. – Defendants
Christy Jones, Esq. – Defendants

Having carefully reviewed the papers submitted and any response received, I have ruled on the above Motions as follows:

### Statement of Facts and Procedural History

This Motion for Protective Order and Motion to Compel comes before the court by motions filed on behalf of Defendants Ethicon and Johnson & Johnson on October 31, 2013.

*"The Judiciary of New Jersey is an equal Opportunity/Affirmative Action Employer"*

· Defendant has requested that the court prohibit plaintiffs' counsel from communicating ex parte with plaintiffs' treating physicians; or alternatively, limit the scope of any ex parte communications by plaintiffs' counsel with a plaintiffs' treating physician solely and exclusively to the facts constituting the treatment that the given treating physician provided to the given plaintiff and the plaintiff's medical condition, and prohibiting plaintiffs' counsel from providing to and/or discussing with plaintiffs' treating physicians the contents of any documents produced by defendants in this action.

Additionally, defendants requested that the court order that plaintiffs immediately (a) identify the names of all treating physicians with whom communications have taken place; (b) identify the time, place and duration of all such communications; (c) identify each person who participated in the communications; and (d) identify and produce copies of all documents, litigation materials, transcripts, videos, communications, or other materials, shared in any way with any of plaintiffs' treating physicians.

On October 31, 2013, defendants filed this Motion for Protective Order and Motion to Compel. In response to these motions, plaintiffs filed a Cross-Motion for Protective Order and an Opposition to defendants' Motion for Protective Order.

## Legal Analysis

Motion for Protective Order

Generally any party can contact any witness and discuss facts and show the witness whatever literature or documents they would like the witness to review.

"Under Stempler, New Jersey law expressly allows ex parte contacts with plaintiffs' treating physicians as a means of efficiently engaging in discovery and trial preparation." Gaus v.

2

Novartis Pharmaceuticals Corp., No. MID-L-007014-07-MT, at *13 (N.J. Super. Law. Div. Oct. 29, 2009) (citing Stempler v. Speidell, 100 N.J. 368, 382 (1985)). The Court in Stempler stated that "personal interviews . . . are an accepted, informal method of assembling facts and documents in preparation for trial. Their use should be encouraged as should other informal means of discovery that reduce the cost and time of trial preparation." Stempler, 100 N.J. at 382. The issue in Stempler was that while both parties usually are free to communicate with witnesses prior to trial, treating physicians are not usually willing to talk to anyone without authorization from their patients. In the Stempler case, the plaintiff refused to authorize the doctor to discuss the patient ex parte with defense counsel. The court held that the plaintiff had to allow such contact with specific conditions. However, "[w]hile ex parte contacts are permitted under Stempler, the Supreme Court clearly noted that ex parte contacts are not mandatory in all cases. Stempler gave trial courts the discretion to prohibit the use of ex parte contacts, explaining that, in certain instances, the court may require depositions in accordance with formal discovery rules." Gaus, No. MID-L-007014-07-MT, at *14, (citing Stempler, 100 N.J. at 383). Under Stempler, depositions can be required when "under the circumstances a proposed ex parte interview with a specific physician threatens to cause such substantial prejudice to [the opposing party] as to warrant the supervision of the trial court." Stempler, 100 N.J. at 382.

   Plaintiffs claim in their Opposition that there is no precedent limiting a plaintiff's right to explore substantive issues with treating physicians. However, several courts handling mass tort cases similar to the case at bar have limited plaintiffs' ex parte communications with treating physicians to discussion of the facts, prohibiting ex parte discussions involving litigation theory. For example, in In re Ortho Evra Products Liability Litigation, the court entered an order allowing plaintiffs' counsel to meet ex parte with the treating physicians to discuss the

3

physicians' records, course of treatment, and related matters, and prohibiting plaintiffs' counsel from discussing with treating physicians liability issues or theories, product warnings, defendant research documents, or related materials. 2010 WL 320064, at *2 (N.D. Ohio Jan. 20, 2010). Similarly, in In Re: Chantix (Varenicline) Products Liability Litigation, the court ruled:

> [a]lthough plaintiffs' counsel is clearly permitted by law to have ex parte communications with their clients' treating physicians, . . . such communications are limited to the individual care of the individual plaintiffs, such as the plaintiffs' treatment, medical records and conversations with their health care providers. Plaintiffs' counsel shall not discuss defendant's internal documents with plaintiffs' health care providers outside of a deposition or other on the record setting.

No. 2:09-CV-2039-IPJ, at *7 (N.D. Al. June 30, 2011). Additionally, in In re Nuvaring Products Liability Litigation, the court limited plaintiffs' communications with treating physicians to "the particular plaintiff's medical condition at issue in the current litigation." 2009 WL 775442, at *2 (E.D. Mo. March 20, 2009).

In this case, plaintiffs' counsel's interviews with the treating physicians have included plaintiffs' counsel sharing with the physicians documents produced by defendants in discovery in this lawsuit. Plaintiffs maintain the defendants sales representatives have in the past, and continue now to present misleading information to the physicians and they need to show the doctors materials they have not seen.

Treating physicians are a unique type of witness. They are fact witnesses who can describe the basic facts such as medical history symptoms, the type of treatment given and the patient's response, but they also give expert testimony even when the treating doctors are not retained as experts. Physicians are frequently allowed to give opinion testimony even when not retained as experts. For example, by stating what their diagnosis is they are stating a fact, but also giving a medical opinion. When asked, they frequently are allowed under the Rules of

Case 4:05-cv-02004-CMR Document 915-3 Filed 04/23/15 Page 6 of 10

Evidence to give opinions on causation. In cases involving the claim that the defendant manufacturer failed to properly disclose information about the risks of a product, they will be asked what they knew about the product and why they used the product. They are often asked if they still use the product. In a product liability case involving the use of a drug or a medical device, the questioning about the doctors knowledge and use of the product in question is much more complicated than in most personal injury cases.

The plaintiffs argue that the doctors were and are being educated by the defendants about the pelvic mesh products involved in the litigation. There is no doubt that physicians are regularly visited by pharmaceutical product detail representatives who explain the risks and benefits of the defendants' products to doctors. The plaintiffs claim the defendant has given doctors a misleading picture of pelvic mesh products and they want to be able to give the doctors scientific literature, studies, and in some cases, internal documents of the defendants that present a different view of the pelvic mesh products.

On a larger scale, the plaintiffs argue they have a right to "educate" the medical community about the risks of pelvic mesh products by providing them with information that has been wrongfully concealed from them by the defendants. They argue that there is a public benefit to product liability litigation that can improve consumer safety. The U.S. Supreme Court in the landmark case of Levine v. Wyeth, 555 U.S. 555 stated "state law remedies further consumer protection... ."

The defendant counters that in preparation for depositions, the plaintiffs' counsel are the ones who present one side of the story to doctors that may impact their testimony unfairly without the defendants being able to counter the information given by plaintiffs' counsel to the witnesses.

This is a difficult decision because there is merit to the arguments on each side. The primary goal of the court is to ensure that no witnesses are unduly swayed by either side to modify their testimony. The court orders that plaintiffs' counsel shall limit the scope of ex parte communications with plaintiffs' treating physicians to discussions of the facts of the treatment that the given treating physician provided to the given plaintiff and the plaintiff's medical condition and medical history. They can discuss diagnosis, prognosis and causation as it relates to the particular patient/plaintiff. Plaintiff's counsel may not have ex parte discussions with the treating doctors about (1) their understanding of the risks and benefits of pelvic mesh products except as to what they knew and understood about when they used a particular product on the particular patient; (2) their past and present use of pelvic mesh products in general; (3) the risk and benefit information they received from agents or sales representatives of the defendants; (4) scientific literature, seminars, warnings or other tools the doctor used to obtain knowledge about the risks and benefits of the products; (5) theories of liability of the plaintiffs in the pelvic mesh litigation.

The plaintiffs' counsel are also prohibited from showing the treating doctor any depositions or internal documents produced by defendants or scientific studies or literature prior to the deposition of the treating doctor although they may show these documents to treating doctors and question them at their depositions about these materials if the questions are relevant to the case. These restrictions shall not apply to plaintiff's counsel's ex parte communications with plaintiffs' treating physicians whom plaintiffs have retained as expert witnesses.

Defendants' sales people, detail people or other representatives of the defendant are prohibited from discussing with any treating physicians prior to their depositions the litigation or defense theories in the litigation or any pelvic mesh product they are not currently selling or

6

attempting to sell to the doctor. This limitation does not apply to treating physicians who have been retained as experts. All pre-deposition communications by plaintiffs' counsel shall be limited to the facts of the specific patient's history and treatment, the understanding of the doctor of the products used on the patient at the time they were used and opinions on prognosis, diagnosis and causation during the doctor treatment of the patient/plaintiff.

Motion to Compel

Defendants seek to compel plaintiffs to (a) produce the names of all treating physicians with whom ex parte communications have taken place; (b) identify the time, place and duration of all such ex parte communications; (c) identify each person who participated in the ex parte communications; and (d) identify and produce copies of all documents or other materials that plaintiffs' counsel shared with plaintiffs' treating physicians.

"The work product doctrine . . . protects from disclosure those documents and other tangible things that a party or a party's representative prepares in anticipation of litigation." Laporta v. Gloucester Cty. Bd. of Chosen Freeholders, 340 N.J. Super. 254, 259 (App. Div. 2001). "[A] party may obtain discovery of [materials] prepared in anticipation of litigation . . . only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of the case and is unable without undue hardship to obtain the substantial equivalent of the materials by other means." R. 4:10-2(c). "[A] statement or other document will be considered to have been prepared in anticipation of litigation if the 'dominant purpose' in preparing the document was concern about potential litigation and the anticipation of litigation was 'objectively reasonable.'" Miller v. J.B. Hunt Transport, Inc., 339 N.J. Super. 144, 150 (App. Div. 2001).

7

Defendants request that this court order plaintiffs to reveal the names of the treating physicians with whom plaintiffs' counsel has engaged in ex parte communications; the time, place, and duration of the ex parte communications; and the names of each person who participated in the ex parte communications. This information constitutes protected work product, and it therefore does not have to be disclosed to defendants. Plaintiffs' counsel's ex parte communications with the physicians were in anticipation of litigation. The "dominant purpose" in communicating with the treating physicians was the concern about potential litigation. The anticipation of litigation was "objectively reasonable" because plaintiffs had already filed their claims at the time of the communications.

The exception to the work product doctrine does not apply because although defendants likely have substantial need of this information in the preparation of their case, they are able without undue hardship to obtain the substantial equivalent of the information by other means. Defendants can depose the treating physicians and inquire as to whether they engaged in ex parte communications with plaintiffs' counsel. If the treating physicians answer affirmatively, then defendants can ask for the location, time, and duration of the ex parte communications, and the names of each person that participated in the ex parte communications.

The documents and other materials that plaintiffs' counsel shared with the treating physicians during ex parte communications constitute protected work product, and therefore these materials do not have to be disclosed to defendants. Other courts have found that when an attorney sifts through a myriad of documents and selects certain documents to show to a witness, the selection of documents is entitled to work product protection. In Sporck v. Peil, the court stated that "[i]n selecting and ordering a few documents out of thousands counsel could not help but reveal important aspects of his understanding of the case. Indeed, in a case . . . involving

8

extensive document discovery, the process of selection and distillation is often more critical than pure legal research." 759 F.2d 312, 316 (3d Cir. 1985). "Proper preparation of a client's case demands that [an attorney] assemble information, sift what he considers to be the relevant from the irrelevant facts, prepare his legal theories and plan his strategy without undue and needless interference." Id. Additionally, in Mercator Corp. v. United States, the court stated that "[t]he principle underlying the work product doctrine – sheltering the mental processes of an attorney as reflected in documents prepared for litigation – is not generally promoted by shielding from discovery materials in an attorney's possession that were prepared neither by the attorney nor his agents." 318 F.3d 379, 384 (2d Cir. 2003). However, "where a request is made for documents already in the possession of the requesting party, with the precise goal of learning what the opposing attorney's thinking or strategy may be, even third-party documents may be protected." Id. at 385.

Plaintiffs' counsel showed these documents and other materials to the treating physicians because of their anticipation of litigation. The exception to the work product doctrine does not apply because although defendants likely have substantial need of the materials in the preparation of the case, they are able without undue hardship to obtain the substantial equivalent of the materials by other means. Defendants can depose the treating physicians and ask them which documents and other materials plaintiffs' counsel showed them during their ex parte communications with plaintiffs' counsel.

Defense counsel shall submit the appropriate Order.

_____
CAROL E. HIGBEE, P.J.Cv.

9